Maria DiFILIPPO and Raina DiFilippo, by her mother and next friend Maria DiFilippo, Plaintiffs-Appellants, Cross-Appellees,

v.

Tullio MORIZIO, Defendant-Appellee, Cross-Appellant.

Nos. 814, 815, Dockets 84–7729, 84–7751.

United States Court of Appeals, Second Circuit.

Argued Feb. 19, 1985.

Decided April 5, 1985.

Robert J. Kor, Hartford, Conn. (Peter F. Helwig, Neighborhood Legal Services, Inc., Hartford, Conn., of counsel), for plaintiffs-appellants, cross-appellees.

Kevin G. Dubay, Hartford, Conn. (Fazzano & Dubay, Hartford, Conn., of counsel) for defendant-appellee, cross-appellant.

Before FEINBERG, Chief Judge, VAN GRAAFEILAND and WINTER, Circuit Judges.

WINTER, Circuit Judge.

Plaintiffs, by their attorneys Neighborhood Legal Services, Inc., appeal the award of $13,253.73 in attorney's fees under the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988 (1982) by Judge Cabranes, resulting from a 50 percent reduction of the lodestar amount. Defendant cross-appeals from the award of attorney's fees. We reverse and remand.

### BACKGROUND

This appeal and cross-appeal from the award of attorney's fees arises out of a successful housing discrimination lawsuit brought by Maria DiFilippo and her daughter Raina.

We first summarize the facts of the underlying action. In August, 1978, defendant Tullio Morizio agreed to rent an apartment in Hartford to Maria DiFilippo, and accepted a deposit on the rent from her. A

few days later Maria, who is white, returned to make a further payment on the rental balance. She was accompanied by her daughter Raina, who is of mixed black and white parentage. Morizio's son accepted the deposit and gave her the keys to the apartment. The next day, Maria was informed by another tenant that Morizio did not want to rent to her and would refund her deposit money upon receiving back the apartment keys. In a later telephone conversation Morizio stated that he wanted to keep the neighborhood white and that, when he had agreed to rent to Maria, he had not known that she was "that kind of girl." In a subsequent meeting, Morizio stated in front of both Maria and Raina that blacks caused buildings to deteriorate and that he wanted to keep the street white. He offered to rent to the DiFilippos an apartment in another location where the only two black tenants of Morizio's fifty-eight tenants lived, stating that she would be happier there because her daughter and expected child were black. At this meeting, Morizio returned the money and DiFilippo returned the keys.

On August 18, 1978, the DeFilippos brought this housing discrimination action under the Fair Housing Act of 1968, 42 U.S.C. § 3604 (1982) and the Civil Rights Act, 42 U.S.C. § 1982 (1982). In March, 1983, after a one day bench trial, the district court found that Morizio had intentionally discriminated against the plaintiffs in violation of 42 U.S.C. §§ 1982, 3604. After a careful review of compensatory and punitive damage awards in similar housing discrimination cases, Judge Cabranes awarded Maria $750 and Raina $1000 as compensatory damages and $250 each as punitive damages for a total award against Morizio of $2250.00.

Plaintiffs then moved for attorney's fees under the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988 (1982) and the Fair Housing Act of 1968, 42 U.S.C. § 3612(c) (1982).[1]

---

1. Plaintiffs are entitled to attorney's fees under 42 U.S.C. § 1988 and 42 U.S.C. § 3612(c). Neither party disputes that the method of determining the fee under either act is the same. How-

Plaintiffs' attorneys claimed an expenditure of 302 hours on this matter and sought fees in the amount of $27,832.82 (lodestar amount of $26,507.45 plus 5 percent). The district court found the hours to be reasonable in view of the disputed facts, the amount of pretrial discovery, and the legal issues. However, noting the small size of the damage award and the straightforward and non-novel nature of the case, he cut the lodestar amount by 50 percent and awarded $13,253.73 to plaintiffs' attorneys. This appeal and cross-appeal from the award of attorney's fees followed.

## DISCUSSION

We reverse and remand. To summarize, the supporting findings of the district court do not support a reduction of the lodestar figure. However, our scrutiny of the record reveals ample reason to question the number of hours upon which the proposed lodestar amount was based, and we remand to the district court for reconsideration.

■ The Civil Rights Attorney's Fees Award Act of 1976 amended 42 U.S.C. § 1988 to provide that "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." In exercising its discretion, the district court correctly made an initial inquiry into whether the substantive claim was so strong on the merits and so likely to result in a substantial judgment that private counsel in similar cases could be easily and readily obtained. *Kerr v. Quinn*, 692 F.2d 875, 878 (2d Cir.1982). It concluded that "[i]nasmuch as this litigation lasted five years and resulted in a total recovery of $2,250, it is apparent that 'the prospects of success [were not] sufficiently bright to attract competent private counsel on a contingent fee basis,'" *DiFilippo v. Morizio*, No. H 78–434 (D.Conn. July 27, 1984), op. at 2, *quoting Zarcone v. Perry*, 581 F.2d 1039, 1044 (2d Cir.1978), *cert. denied*, 439

U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979). While the district court reached the correct conclusion, we note that the analysis should not have been based upon the hindsight afforded by the actual results in the case. Rather, it should have been an *ex ante* determination of whether the chance of a substantial judgment was sufficiently great when the case was brought to ensure retention of private counsel on a contingency basis whether or not a statutory fee award might be available. *Kerr*, 692 F.2d at 878. Because the facts in the instant case were disputed and damage awards in housing discrimination cases are generally low, as demonstrated in the district court's review of similar cases in its decision on the merits, an award of attorney's fees was clearly justified in the instant case.

■ The next step in awarding attorney's fees is to determine the proper amount. While a district court's factual determination of the proper award is to be accorded deference, *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983), the latitude of its discretion is narrowed by a presumption that successful civil rights litigants should recover reasonable attorney's fees unless special circumstances render such an award unjust. S.Rep. No. 1011, 94th Cong., 2d Sess. 4, *reprinted in* 1976 U.S. Code Cong. & Ad. News 5908, 5912. Furthermore, where, as here, the party achieves success on the merits, an award of all reasonable hours at a reasonable hourly rate, i.e., the lodestar figure, is presumptively appropriate. We have also stated that "[w]henever the district court augments or reduces the lodestar figure it must state its reasons for doing so 'as specifically as possible.'" *Cohen v. West Haven Board of Police Commissioners*, 638 F.2d 496, 505 (2d Cir.1980), *quoting Lindy Bros. Builders, Inc. v. American*

---

ever, § 3612(c) requires a finding that the plaintiff "is not financially able to assume said attorney's fees," a finding which was not made in the district court. Appellee did not raise the question of Ms. DiFilippo's capacity to pay the fees

either in the district court or on this appeal. In any case, § 1988 is not so limited, entitling plaintiffs to attorney's fees irrespective of their ability to pay.

*Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 169 (3d Cir.1973).

■ In the instant case, the district court found the hours expended by counsel to be reasonable and the representation afforded to be skillful. Nevertheless, it reduced the lodestar figure by 50 percent because the damage award was low and the case was straightforward and non-novel. We believe a reduction made on the grounds of a low award to be error unless the size of the award is the result of the quality of representation. "[A]warding attorney's fees in a manner tying that award to the amount of damages would subvert the statute's goal of opening the court to all who have meritorious civil rights claims." *Lynch v. City of Milwaukee*, 747 F.2d 423, 429 (7th Cir.1984). We believe the appropriate question is whether the size of the award is commensurate with awards in fair housing cases generally, rather than whether the award viewed in some absolute terms is high or low. Since the district court's analysis, op. at 19, and other sources, Schwemm, *Compensatory Damages in Federal Fair Housing Cases*, 16 Harv.C.R.–C.L.L.Rev. 83, 105–120 (1981), demonstrate a consistency between the award here and fair housing damage awards generally, it is clear that the plaintiffs won an unambiguous victory in the instant case and their attorneys should recover a fully compensatory fee. *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940. Our examination does not end with this conclusion, however.

■ The district court also based its reduction of the award on the straightforward and non-novel nature of the case. Under the logic of *Blum v. Stenson*, — U.S. —, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), the fact that a case is straightforward is not grounds to reduce a lodestar award. However, the nature of the case does raise the issue of the propriety of the proposed lodestar amount. In the district court, defendant challenged the reasonableness of the 302 hours expended by plaintiffs' attorneys. The court ruled for the plaintiffs and, while defendant challenges

the award on his cross-appeal, he has not addressed the reasonableness of the 302 hours in this court. However, it is apparent to us from the briefs and argument and findings of the district court that the reasonableness of this award cannot be realistically or fairly appraised without some examination of the proposed lodestar amount as based on the hours expended by plaintiffs' counsel. Even a cursory examination of those hours reveals that they are clearly excessive.

■ Given the fact that the hourly rates governing fee awards to non-profit legal services organizations are calculated according to prevailing private market rates, *Blum*, 104 S.Ct. at 1547, it follows that the reasonableness of the time expended must also be judged by standards of the private bar. As the Supreme Court noted in *Hensley*,

The district court also should exclude ... hours that were not "reasonably expended." S.Rep. No. 94–1011, p. 6 (1976). Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Copeland v. Marshall*, 205 U.S. App.D.C. 390, 401, 641 F.2d 880, 891 (1980) (en banc) (emphasis in original).

461 U.S. at 434, 103 S.Ct. at 1939.

■ In ruling on applications for fees, district courts must examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case. Efforts put into research, briefing and the preparation of a case can expand to fill the time available,

and some judgment must be made in the awarding of fees as to diminishing returns from such further efforts. Moreover, particular cases have particular needs. The need for extensive discovery, for example, does not justify numerous hours of legal research or vice-versa. In making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties.

■ Although we leave to the district court on remand the precise determination of the time to be compensated, we will note by way of illustrative analysis our reasons for believing the expenditure of 302 hours in the instant case to be grossly excessive. Viewing the matter first in general terms, the instant case involved a one day 6½ hour trial at which four witnesses testified. The only substantial issue was whether the refusal to rent to plaintiffs was racially motivated, and that was a matter for a credibility determination by the district court. An expenditure of 302 hours on such a case is facially excessive. If a self-employed lawyer were to work extremely hard and bill 2100 hours annually on the same basis as plaintiffs' counsel here, his or her entire practice would consist of only seven simple cases such as this each year, a total of seven trial days. The time spent here is thus clearly inconsistent with standards governing the private practice of law.

A more detailed examination of the hours expended reveals five categories of concern. First are contemporaneous entries entitled generally "pretrial preparation" of some 36 hours. Since these hours are in addition to numerous hours explicitly allocated to separate categories of witness preparation, discovery, and pretrial conferences, they seem excessive. However, we note that a number of trial dates were set that did not materialize. Since an attorney must refresh his memory in preparation for each trial date, perhaps some portion of these hours can be justified, a determination best left to the trial court in view of its

familiarity with the procedural progress of the case.

■ Other categories of time expended are excessive as a matter of law. Some 39 hours of research was devoted to the legal question of the applicability of Title VII standards to Title VIII proceedings, an issue of little complexity or doubt. A further 46 hours were spent preparing a pretrial memorandum for this one day trial. A further 29 hours were spent on a posttrial memorandum after this one day trial. Finally, 42 hours were spent on the fee motion itself, an utterly excessive claim. The total number of hours in clearly excessive categories comes to 192 hours, nearly ⅔ of the request. On the remand, the district court, in recalculating the fee award, should determine the hours reasonably necessary to litigate the present case according to the standards outlined in this opinion.

■ In sum, when a prevailing party in a civil rights action wins an unambiguous victory, the imposition of a negative multiplier because the damage award is low is error if the award is typical of awards in the same type of case. The reasonableness of the time claimed is to be judged by standards of the private bar as informed by the district court's familiarity with the particular case and its experience in such matters. The hours claimed are to be examined in detail with a view to the subject matter of the particular time expended and the value of the work product to the client in light of the standards of the private bar.

We leave to the district court on remand the determination of the fee to be awarded. In light of the fact that the $13,253.73 award was by no means an unreasonable award from the plaintiffs' point of view and of the mixed results of this appeal, attorney's fees should not be awarded for this appeal. No costs.

Reversed and remanded for proceedings not inconsistent with this opinion.