Anthony MIELE, Jr., Joseph D. Kenna, and Vincent Barraco, Individually and on behalf of all others similarly situated, Plaintiffs-Appellants,

v.

NEW YORK STATE TEAMSTERS CONFERENCE PENSION & RETIREMENT FUND, Al Sgaglione as Executive Administrator, Josephine Dontino, as Assistant Administrator, T. Edward Nolan, Irving Wisch, Kepler Vicent, R.F. De Perno, Jack Canzoneri, Victor Moussaeu, and Paul Bush, individually and in their capacity as Trustees of the New York State Teamsters Conference Pension & Retirement Fund, Defendants-Appellees.

No. 25, Docket 86–7892.

United States Court of Appeals, Second Circuit.

Argued Sept. 30, 1987.

Decided Oct. 23, 1987.

Allan L. Gropper, New York City (Dwight A. Healy, White & Case, New York City, Edgar Pauk, Toby Golick, Jonathan A. Weiss, Legal Services for the Elderly, New York City, N.Y., on brief), for plaintiffs-appellants.

Peter P. Paravati, New York City (Lawrence Vincent Kelly, New York City, on brief), for defendants-appellees.

Before VAN GRAAFEILAND, MESKILL and NEWMAN, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

The issue on this appeal is whether the District Court exceeded its discretion in its

selection of an hourly rate for purposes of awarding a reasonable attorney's fee. More precisely the issue is whether the Court erred in basing its determination of an appropriate hourly rate partly on non-market rates. The issue arises on an appeal by three employees who obtained pension benefits as a result of a successful settlement of their claims against the New York State Teamsters Conference Pension & Retirement Fund and its officials. Upon an application for an attorney's fee, the District Court for the Eastern District of New York (Leonard D. Wexler, Judge), in an order filed September 17, 1986, awarded a fee of $26,425. In calculating this award, the District Court selected a rate of $100 per hour. Because this rate was based in part on non-market rates, we conclude that the award must be vacated and reconsidered by the District Court, applying the correct standard.

Plaintiffs sued to obtain their pension benefits under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. (1982). Having secured in a settlement the full relief they had sought in the litigation, the plaintiffs moved for an award of a reasonable attorney's fee pursuant to section 502(g) of ERISA, 29 U.S.C. § 1132(g). Their motion claimed a fee of $38,887.50, based on 259.25 hours of work by three attorneys at $150 per hour. The hours were justified in detailed contemporaneous time records, as we have required. See New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir.1983). In support of the claimed hourly rate, plaintiffs submitted a detailed affidavit of rates billed by lawyers in New York City with experience comparable to that of plaintiffs' three counsel. Plaintiffs also submitted affidavits describing the educational and professional backgrounds of their counsel. In 1981, when the lawsuit was filed, the three attorneys had been practicing law for 18, 12, and 5 years, respectively. Defendants opposed the $150 rate but offered no evidence of a more appropriate rate. They contended that lawyers working for a publicly funded law office should not receive fees "based on a rate structure that is deter-mined by what private attorneys have to charge in order to pay their overhead." Plaintiffs' counsel are employed by Legal Services for the Elderly, a non-profit program funded by the National Legal Services Corporation.

Judge Wexler awarded an attorney's fee of $26,425, accepting the number of hours originally claimed, plus five hours claimed for the fee application, but applying an hourly rate of $100. Ruling from the bench, he explained that he was selecting this rate "[a]fter reading all of the papers, after knowing what public service organizations charge, what middle Wall Street associates charge, what Social Security we give under Freedom of Information [sic], what assigned counsel in criminal cases get and everybody gets a different fee." This statement, perhaps somewhat garbled by the court reporter, appears to have intended references to fees awarded in social security cases, in suits brought under the Freedom of Information Act, 5 U.S.C. § 552 (1982), and in criminal cases, see Criminal Justice Act of 1964, as amended, 18 U.S.C. § 3006A (Supp. III 1985). It is not clear whether, in referring to fees in social security cases, Judge Wexler had in mind the provision permitting a fee award of up to 25% of the amount recovered, 42 U.S.C. § 406(b)(1) (1982), or the provision of the Equal Access to Justice Act permitting a fee award, where the Government's position on the merits was not substantially justified, at an hourly rate normally not to exceed $75, 28 U.S.C. § 2412(d)(1)(A), (2)(A) (Supp. III 1985).

ERISA, like many other recent statutes that have modified the American Rule and provided for an award of an attorney's fee to the prevailing party, see Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, — U.S. —, 106 S.Ct. 3088, 3096–97, 92 L.Ed.2d 439 (1986), authorizes an award of a "reasonable" attorney's fee. 29 U.S.C. § 1132(g)(1). In Blum v. Stenson, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), the Supreme Court considered the standards for determining the hourly rate of a "reasonable" attorney's fee to be awarded under fee-shifting stat-

utes. Interpreting the fee provision of the Civil Rights Attorney's Fee Award Act of 1976, 42 U.S.C. § 1988 (1982), the Court held that "prevailing market rates in the relevant community" are the proper basis for an award. 465 U.S. at 895, 104 S.Ct. at 1547. Explicitly rejecting the contention that publicly funded legal services organizations should receive fees based on a rate below market rates in view of their lower overhead compared to private law firms, *id.* at 892–93, 104 S.Ct. at 1545–46, the Court required use of market rates "regardless of whether plaintiff is represented by private or nonprofit counsel." *Id.* at 895, 104 S.Ct. at 1547 (footnote omitted). The Court recognized that a "market rate," determined solely by supply and demand, does not exist for legal services. Nevertheless, it used the term to mean the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* at 896 n. 11, 104 S.Ct. at 1547 n. 11. The Court has subsequently applied its view of a reasonable attorney's fee under § 1988 to other fee-shifting statutes. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, supra* (construing "reasonable" attorney's fee provision of Clean Air Act, 42 U.S.C. § 7604(d) (1982)).

Prior to *Blum v. Stenson, supra,* we had expressed concern about some fee awards to publicly funded legal services organizations based on private law firm hourly rates so high as to produce a windfall. *See New York State Ass'n for Retarded Children, Inc. v. Carey, supra,* 711 F.2d at 1150–52. However, that concern was not shared by the Supreme Court, and after *Blum v. Stenson* we have recognized that prevailing market rates are fully applicable to fee awards to non-profit organizations. *See DiFilippo v. Morizio,* 759 F.2d 231, 235 (2d Cir.1985).

In this case, it is apparent that the District Judge did not select an hourly rate based solely on prevailing market rates. Instead the Judge used a combination of rates, some of which are subject to statutory maximums, *e.g.,* the normal $60 per hour limit on in-court time specified in the Criminal Justice Act of 1964, as amended, 18 U.S.C. § 3006A (Supp. III 1985). Though a district judge has some discretion in determining the hourly rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation," *Blum v. Stenson, supra,* 465 U.S. at 896 n. 11, 104 S.Ct. at 1547 n. 11, that discretion must be exercised on the basis of rates charged to clients of private law firms. Otherwise, the concept of "prevailing market rates" would mean less for legal services organizations than for law firms, a position the Supreme Court has rejected. The Court has made clear that the "lawyers of reasonably comparable skill, experience, and reputation" it had in mind are those of the private bar. "[T]he rates charged in private representations may afford relevant comparisons." *Id.*

However, we do not share the view, urged by appellants, that a district judge may not rely in part on the judge's own knowledge of private firm hourly rates in the community and instead must consider only the hourly rate data submitted into evidence. Though this view is apparently supported elsewhere, *see NAACP v. City of Evergreen, Alabama,* 812 F.2d 1332, 1336 (11th Cir.1987); *Black Grievance Committee v. Philadelphia Electric Co.,* 802 F.2d 648, 657 (3d Cir.1986), *vacated and remanded on other grounds,* — U.S. —, 107 S.Ct. 3255, 97 L.Ed.2d 754 (1987), we think it unduly restricts the discretion of district judges in determining matters that concern the officers of the court who appear before them. Though the affidavit of hourly rates charged by numerous lawyers with a range of skills and experiences comparable to those of plaintiffs' counsel was extremely detailed and would support the claimed hourly rate of $150, we think Judge Wexler had discretion to rely, in addition, on his knowledge of New York City rates so long as he considered rates charged by comparable lawyers at the private bar. Since his exercise of discretion was not confined to such rates and included rates subject to statutory ceilings, the fee

application must be returned to him for further consideration in light of this opinion.

Accordingly, the order of the District Court is reversed and remanded.