Michael PROULX, Plaintiff,

v.

CITIBANK, N.A., Defendant.

Nos. 84 Civ. 8156 (MBM), 85 Civ. 4348 (MBM).

United States District Court, S.D. New York.

March 15, 1989.

Minna J. Kotkin, Concettina Sacheli and Dominique Penson, Legal Interns, Brooklyn, N.Y., for plaintiff.

Bettina B. Plevan, Andrew P. Marks, Proskauer Rose Goetz & Mendelsohn, New York City, for defendant.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff Michael Proulx sued initially for sexual harassment and retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1982). He was awarded summary judgment on a claim that his discharge by defendant Citibank was in retaliation for a sexual harassment complaint he filed with the New York State Division of Human Rights ("DHR"), even though that DHR complaint was presumed not only meritless but also malicious for purposes of the motion. 659 F.Supp. 972 (S.D.N.Y.1987). Thereafter, following a trial on damages in which he claimed more than $42,000 plus fringe benefits and interest, or a total of more than $70,000, Proulx was awarded $693.55 in damages, and no interest. 681 F.Supp. 199 (S.D.N.Y.1988). That judgment was affirmed on plaintiff's appeal, Citibank taking no cross-appeal from the finding of liability. Plaintiff now moves for $44,226 in legal fees for his counsel, BLS Legal Services, Inc., including $39,513 for the action itself and $4,713 for this fee motion. Citibank resists on a variety of grounds, including that plaintiff was not in any meaningful sense the prevailing party in this litigation, and that BLS is a clinical program at Brooklyn Law School staffed by law students, which does not qualify under relevant authority for an award of legal fees.

As set forth below, because I have found that plaintiff prevailed on the issue of liability for the retaliation claim, and that BLS does qualify for an award of legal fees, plaintiff will recover of defendant $4782 in legal fees on the liability phase of the case. Plaintiff is also awarded $1500 in legal fees on the fee application, for a total recovery of $6282.

### I.

In an action brought to enforce civil rights statutes, 42 U.S.C. § 1988 provides that "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." Notwithstanding the permissive language of the statute, there is "a presumption that successful civil rights litigants should recover reasonable attorney's fees unless special circumstances render such an award unjust." *DiFilippo v. Morizio,* 759 F.2d 231, 234 (2d Cir.1985).

The proper measure of fees to the prevailing party ordinarily is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," *Hensley v. Eckerhart,* 461 U.S. 424, 433,

103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), the so-called lodestar amount, with the caveat that when plaintiff presses more than one claim, no fee may be awarded for services rendered in connection with an unsuccessful claim. *Id.* at 435, 103 S.Ct. at 1940. The Supreme Court in *Eckerhart* cautioned that "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Id.* at 440, 103 S.Ct. at 1943. However, the Second Circuit has held "a reduction made on the grounds of a low award to be error unless the size of the award is the result of the quality of representation," and that "the appropriate question is whether the size of the award is commensurate with awards in [cases of the type under consideration] generally," *Morizio,* 759 F.2d at 235, although that Court recognized that "[e]fforts put into research, briefing and the preparation of a case can expand to fill the time available, and some judgment must be made in the awarding of fees as to diminishing returns from such further efforts." *Id.* at 235–36.

## II.

Although neither party has argued the point, the court's first inquiry must be "whether the substantive claim was so strong on the merits and so likely to result in a substantial judgment that private counsel in similar cases could be easily and readily obtained." *Morizio,* 759 F.2d at 234. Here, there had already been a determination by DHR that the substantive claim could not prevail, and there was no authority for the proposition that if Citibank dismissed Proulx in part because he filed a sexual harassment complaint that was not only without merit but also malicious, that dismissal itself was an impermissible retaliation under the statute. Moreover, the likelihood of a substantial judgment in this case could only have been remote at the outset of the litigation if counsel made searching inquiry of Proulx as to his work history and his job search efforts. Therefore, the prospect of a large recovery was not "sufficiently bright to attract competent private counsel on a con-

tingent fee basis." *Zarcone v. Perry,* 581 F.2d 1039, 1044 (2d Cir.1978), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979). Accordingly, an award of attorneys' fees is justified here, assuming other factors are consistent with such an award.

Citibank insists, however, that other factors preclude such an award. In particular, Citibank raises three objections to plaintiff's recovery of fees. First, it cites BLS's status as a law school clinical program overseen by faculty members and staffed by students, where educational concerns allegedly predominated. Next, it cites plaintiff's presumed bad faith in filing his sexual harassment claim as contrasted with its own good faith. Finally, Citibank urges that plaintiff's minuscule recovery is a "special circumstance," *Morizio,* 759 F.2d at 234, warranting denial of legal fees. These arguments are devoid of merit.

Citibank's first argument is foreclosed by *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984), where the Supreme Court held that, "[t]he statute [42 U.S.C. § 1988 (1976 ed., Supp. V) ] and legislative history establish that 'reasonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." That BLS has an educational mission is irrelevant to any determination of whether or not its clients are eligible for a fee recovery. The holding in *Stenson* means that they are. Obviously, if the activities of the students at BLS are to be valued in assessing fees, they will be valued according to the principles that govern the profession for which those students have begun to train, among which may be found the following: " 'Hours that are not properly billed to one's *client* [such as those that are excessive, redundant, or otherwise unnecessary] also are not properly billed to one's *adversary* pursuant to statutory authority.' " *Eckerhart,* 461 U.S. at 434, 103 S.Ct. at 1940, quoting *Copeland v. Marshall,* 641 F.2d 880, 891 (D.C.Cir.1980) (*en banc*) (emphasis in original). Thus, if, as Citibank contends, the students at BLS and

their supervisors were profligate in their use of time so as to generate diverse legal proceedings that served no purpose in the litigation but were intended simply to broaden the experience of the students, that is a factor to be weighed in determining the amount of the fees, but not whether fees are payable at all.

■ Citibank is no more convincing when it contrasts plaintiff's presumed bad faith with its own good faith as a reason for denying fees. Here it seems significant to note that Citibank did not cross-appeal the liability finding when Proulx appealed following the damage award. Perhaps this resulted from tactical considerations, including the prospect of a trial on liability that might be a good deal more costly than the minimal damage award against Citibank. Whatever the reason, Citibank did not appeal, and it is in no position to deny that Proulx was the prevailing party, at least on the liability portion of the case.

■ So far as the size of the award, *Morizio* stands squarely for the proposition that, "a reduction made on the grounds of a low award [is] error unless the size of the award is the result of the quality of representation." 759 F.2d at 235. *A fortiori*, denial of fees on such grounds would be error.

### III.

BLS filed its successful motion for summary judgment on May 15, 1986. The motion was decided on May 14, 1987. Before the motion was filed, BLS students recorded a total of 239.9 hours, of which 115.7 were devoted to the motion. Citibank has offered to assume, charitably to plaintiff in my opinion, that half of the remaining 124.2 hours were devoted to the successful retaliation claim. This assumption is charitable to plaintiff because it is difficult to see what investigation BLS had to devote to the successful retaliation claim when plaintiff and defendant agreed for purposes of the motion that Citibank had been motivated in part when it fired plaintiff by his filing of what Citibank believed was a malicious DHR complaint. Investigating the merits of the sexual harassment claim,

on the other hand, could be expected to consume a good deal of time. Half of those remaining hours amounts to 62.1 hours which, when added to 115.7 hours, yields 177.8 hours spent by BLS students before the motion was filed.

Because BLS is staffed by students, because those students obviously do not devote their entire time to working on BLS cases, and because the passage of time often compels the replacement of one student with another, BLS has reduced its lodestar student hours by 50% for duplication, excess and inefficiency, which would result in a claim of 88.9 hours for the period before the motion was filed.

■ As they do everything else, the parties contest the rate at which plaintiff is to be compensated for the time of the BLS students. Plaintiff seeks $40 per hour, claiming that that is the market rate at which law firms charge clients for the time of their student clerks. Citibank cites authority for the proposition that law students are non-professionals whose time may be recovered only "as an item of expense, based on actual wages paid." *Farkas v. Robson*, 85 Civ. 5466 (KC), slip op. at 4, 1988 WL 108410 (S.D.N.Y. Sept. 30, 1988). *See also Chambless v. Masters, Mates & Pilots Pension Plan*, 80 Civ. 4258 (RLC), 1988 WL 80170 (S.D.N.Y. July 21, 1988); *CTS Corp. v. Electro Materials Corp. of America*, 476 F.Supp. 144, 145 (S.D.N.Y.1979).

Unlike the law students in those cases, however, the law students in this case functioned, by permission of the court, as lawyers. Rules 3(a) and 9(c) of Appendix A to the Civil Rules of this Court specifically permit students participating in clinical programs like BLS so to function. The BLS students signed the briefs, argued, and otherwise acted, albeit under the supervision of their faculty supervisor, as lawyers. If, as the legislative history and the cases make clear, it is the function of 42 U.S.C. § 1988 "to ensure 'effective access to the judicial process' for persons with civil rights grievances," *Eckerhart*, 461 U.S. at 429, 103 S.Ct. at 1937 (quoting H.R.Rep.

No. 1558, 94th Cong., 2d Sess. 1 (1976)), and if the BLS students in this case acted to promote that goal with the specific permission of the court, it would be anomalous to deny fees in such circumstances. Nevertheless, a determination that the students' time should be compensated at an appropriate market rate does not determine what that rate should be. Although BLS argues that $40 per hour is the appropriate rate, BLS itself in most of its prior fee applications sought a fee of $25 per hour; one case in which BLS sought $50 per hour involved only 49.8 hours and the fee claim was settled for $2,000. Under all the circumstances, and assuming that the skill of the law students who presented the summary judgment motion was comparable to the skill of the students who tried the damages case before me, I believe an hourly rate of $30 per hour is reasonable. Multiplying 88.9 hours by the $30 per hour rate generates a fee of $2667 for student time spent on the liability phase of the case.

The time claimed for the supervising professor, Minna J. Kotkin, in connection with the motion and attendant activity, including 12.4 hours spent on the motion itself, plus half of the 3.4 hours spent before May 15, 1986 totals 14.1 hours. Plaintiff seeks $150 per hour for Professor Kotkin's time, which I find reasonable based on her seniority and level of accomplishment as a 1975 honors graduate of Rutgers University Law School and her wide experience in handling civil rights litigation in federal court. Multiplying 14.1 hours by $150 yields a fee of $2115 for Professor Kotkin's time in connection with the motion.

### IV.

■ By far the greatest portion of the time for which plaintiff seeks reimbursement, more than 500 hours of student time and almost 50 hours of Professor Kotkin's time, is for the period following submission of the ultimately successful summary judgment motion. Some of that time was spent conducting discovery during the year the motion was pending. Most of it was spent preparing for and conducting the two-day damages trial before me.

It is simply impossible that the discovery conducted during the year when the summary judgment motion was *sub judice* could have contributed to the finding of liability. Indeed, documents submitted by Citibank reflect that such discovery related to the sexual harassment claim that did not provide a basis for recovery in this case. (Plevan Aff., Exhs. K, L)

As to the damages trial, only in the sense in which Pyrrhus of Epirus prevailed over the Romans can Proulx be said to have prevailed in that phase of the case. As noted above, he was awarded less than 1% of the $70,000 in damages he sought. Proulx proffers several cases for the proposition that plaintiffs who recover only nominal damages, sometimes as little as $1, may nonetheless receive many thousands of dollars in legal fees. *McCann v. Coughlin*, 698 F.2d 112, 128–29 (2d Cir.1983) and *Milwe v. Cavuoto*, 653 F.2d 80, 84 (2d Cir.1981) are typical of such cases. In *McCann* the plaintiff secured wide ranging injunctive relief to remedy an ongoing problem, in addition to nominal damages of $1. It was such relief that justified the fee award of $50,000. In *Milwe*, not only did the plaintiff secure a substantial monetary recovery on a related state law claim, but the case also involved redress for police brutality, which, the court found, engaged "society's interest in ensuring that those who enforce the law also abide by it." 653 F.2d at 84. In the case at hand, although there is certainly a substantial interest, guaranteed by statute, in remedying a retaliatory discharge by a private employer, there is nothing in the underlying facts to suggest that it involves anything more than an isolated act. Moreover, plaintiff has been permitted to recover fees for the liability phase of the case. No more appears necessary to vindicate the interests protected by the statute.

Moreover, BLS having been found eligible to recover fees at the market rate, there is no reason why it ought not be held to the market standard in determining whether it should recover fees for the damages trial. As Judge Kaufman put it in *Morizio*, "[e]fforts put into research, brief-

ing and the preparation of a case can expand to fill the time available, and some judgment must be made in the awarding of fees as to diminishing returns from such further efforts." 759 F.2d at 235–36. The judgment to be made here is that Proulx should not recover for efforts that exceeded the point of diminishing returns. *Cf. Carrero v. New York City Housing Authority,* 685 F.Supp. 904, 907 (S.D.N.Y. 1988) (party who failed to mitigate damages denied attorneys' fees for effort spent to recover damages that were denied). He submitted voluminous papers pressing theories of damages that were simply not justified by the facts, and spared himself and his opponent no effort in so doing. Whether or not the amount of the recovery in this case is customary for cases of this kind, as to which neither party has presented evidence or argument, there cannot be any recovery of fees for efforts expended to pursue theories not justified by the facts. Moreover, Citibank's assertion that Proulx would not relent from his extravagant damage claims during settlement negotiations is not contradicted, and is borne out by what happened at the damages trial and by post-trial submissions.

Although plaintiff did recover some damages and thus, in a hypertechnical sense "prevailed," whatever amount of fees that would accordingly be due him is reduced to nil by his overreaching in the damages phase. Accordingly, I find that special circumstances exists here such that plaintiff should not recover legal fees for the trial on damages.

### V.

Finally, Proulx has applied in his reply papers to recover $4,713 of fees in connection with this motion, citing the extensive discovery demanded by Citibank to support its resistance to this motion. The court may award fees for time spent on the fee application motion, *Gagne v. Maher,* 594 F.2d 336, 343–44 (2d Cir.1979), *aff'd,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); *Laffey v. Northwest Airlines, Inc.* 746 F.2d 4, 29 (D.C.Cir.1984), *cert. denied,* 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985), although the Second Circuit has

warned that "[i]f the fee claims are exorbitant or the time devoted to presenting them is unnecessarily high, the judge may refuse further compensation or grant it sparingly." *Gagne,* 594 F.2d at 344. As the previous discussion has documented, plaintiff's claim for fees in this case—particularly fees for needless discovery conducted while the motion was pending and for the trial on damages—was exorbitant. However, because defendant engaged in extensive and partially unnecessary discovery on the motion for attorneys' fees, I find that a lessened award of $1500 is justified.

\*    \*    \*    \*    \*    \*

Plaintiff will recover of defendant $4782 for legal fees on the liability phase and $1500 for legal fees on the motion for attorneys' fees, or a total of $6282.

SO ORDERED.