Bernice ORTIZ, Plaintiff,

v.

Edward V. REGAN, as Comptroller of the State of New York and as Trustee of the New York State and Local Retirement Systems, the New York State and Local Retirement Systems, Gregory O. Child, personally and as Director, Retirement Benefits of the New York

State and Local Retirement Systems, and Jane A. O'Connor, personally and as Assistant Director of the Retirement Benefits Bureau of the New York State and Local Retirement Systems, Defendants.

No. 90 Civ. 1609 (MBM).

United States District Court, S.D. New York.

Nov. 26, 1991.

Anthony Feldmesser, of counsel, Bronx Legal Services Office of the Elderly, Bronx, N.Y., Jonathan A. Weiss, Legal Services for the Elderly, New York City, for plaintiff.

Robert Abrams, Atty. Gen., State of N.Y. (Clement J. Colucci, Asst. Atty. Gen., of counsel), New York City, for defendants.

## OPINION AND ORDER

MUKASEY, District Judge.

The last phase of this pension benefits case is plaintiff's application for counsel fees, most of which were incurred after plaintiff was offered and declined the identical relief she won after more than a year of additional litigation. Because I do not read the Equal Access to Justice Act to require that defendants subsidize such profligacy, plaintiff's counsel will recover a fee of $4750, instead of the requested $57,378.75.

### I.

Defendants cut off completely plaintiff's retirement benefits, without a pre-deprivation hearing, because of an apparent discrepancy between her claimed birth date and what they believed to be her actual birth date. That discrepancy translated into a difference of $1.01 per month in her benefits. *Compare* Complaint Exh. E ($296 per month) *with* Complaint Exh. P ($294.99 per month) By any standard, defendants' summary termination of plaintiff's benefits was an unfair and gross bureaucratic overreaction. After plaintiff fended off defendants' motion to dismiss in October 1990, *see* 749 F.Supp. 1254 (S.D.N.Y.1990), she won a summary judgment in August 1991, *see* 769 F.Supp. 570 (S.D.N.Y.1991), recognizing that she had been denied due process and awarding her a hearing and nominal damages of $1. No other relief was warranted because plaintiff's correct birth date has yet to be determined definitively, defendants have resumed plaintiff's retirement benefits albeit at the lesser rate, and defendants have waived any Eleventh Amendment bar to an award of back benefits should plaintiff prevail at a hearing on that issue. Familiarity with both of those earlier opinions is assumed for current purposes.

From the papers submitted in connection with this motion, however, it appears that

plaintiff could have achieved this result in or about April 1990, without her attorney or the court having to deal with the two substantive motions referred to above. Defendant's counsel has averred without contradiction that on April 4, 1990 and again on April 19, 1990, he offered plaintiff's counsel the opportunity for a hearing under § 74(d) of New York State's Retirement and Social Security Law. (Colucci Aff. ¶¶ 4, 5; Exhs. A, B) On April 25, 1990 he followed up that offer in writing. (Colucci Aff. Exh. C)

The response was a letter from plaintiff's counsel dated April 30, 1990 expressing both skepticism and confusion about the proffered hearing. (Colucci Aff. Exh. D) In a somewhat exasperated reply ("If you say you are confused, I have no choice but to believe you. Let me make it simple."), defendant's counsel reiterated and explained the offer. (Colucci Aff. Exh. E) That generated yet another skeptical letter from plaintiff's counsel, dated May 9, 1990, demanding to know on what authority a hearing was offered, a copy of "the written procedures and/or regulations, if any, that might exist," and restoration of plaintiff to a pension level consistent with the birth date she is not claiming. (Colucci Exh. F) In a letter dated May 10, 1990, defendant's counsel again cited the statute as authority, disclosed where the regulations could be found, and took the position that plaintiff should receive her pension at the diminished rate until her right to the higher rate, based on an earlier birth date, was established. Once again, it bears emphasis that we are talking here about a difference of $1.01 per month.

On May 31, 1990, before the dismissal motion was decided, defendant's counsel again sought to resolve the matter along the lines previously suggested, to no avail (Colucci Aff. ¶ 12, Exh. I), as he did again in June and December 1990, with the same result. (Colucci Aff. ¶¶ 12–15, Exhs. J–M)

As noted above, the result of the summary judgment motion was to grant plaintiff what she could have had more than a year earlier. Moreover, that result was predictable. Plaintiff's birth date was disputed throughout and there was no proffer of any evidence to suggest that any defendant acted with the willfulness that would justify an award of punitive damages. Plaintiff's current application seeks fees for the entire duration of the case, and therefore raises the question of whether defendants should be made to pay for fees incurred after defendants offered plaintiff what she could reasonably have expected to get if she prevailed in the litigation.

II.

In order to assure that plaintiffs with worthy but monetarily small claims arising from denial of civil rights are not discouraged from seeking legal redress, the Equal Access to Justice Act provides that in an action to enforce civil rights statutes, "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988; *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983). Although the language of the statute seems merely permissive, there is "a presumption that successful civil rights litigants should recover reasonable attorney's fees unless special circumstances render such an award unjust." *DeFilippo v. Morizio*, 759 F.2d 231, 234 (2d Cir.1985).

Ordinarily, the proper measure of fees to the prevailing party is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," *Eckerhart*, 461 U.S. at 433, 103 S.Ct. at 1939, the so-called lodestar amount, with the caveat that when plaintiff presses more than one claim, no fee may be awarded for services rendered in connection with an unsuccessful claim. *Id.* at 435, 103 S.Ct. at 1940. The Supreme Court cautioned that "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Id.* at 440, 103 S.Ct. at 1943. However, the Second Circuit has held "a reduction made on the grounds of a low award to be error unless the size of the award is the result of the quality of representation." *Morizio*, 759 F.2d at 235. *See also, Cowan v. Pru-*

*dential Ins. Co.*, 935 F.2d 522 (2d Cir.1991) (barring strict reliance on the size of the damage award as a measure of attorneys' fees). Even an award of nominal damages justifies attorneys' fees if the nominal damages did not result from inadequate representation. *Fassett v. Haeckel*, 936 F.2d 118, 121–22 (2d Cir.1991) (*per curiam*). Therefore, "the appropriate question is whether the size of the award is commensurate with awards in [cases of the type under consideration] generally." *Morizio*, 759 F.2d at 235. The Second Circuit also has recognized, however, that "[e]fforts put into research, briefing and the reparation of a case can expand to fill the time available, and some judgment must be made in the awarding of fees as to diminishing returns from such further efforts." *Morizio*, 759 F.2d at 235–36.

█ The first inquiry must be "whether the substantive claim was so strong on the merits and so likely to result in a substantial judgment that private counsel in similar cases could be easily and readily obtained." *Id.* at 234. Here, although there was always a strong substantive claim to restoration of benefits at least to the level defendants concede is due regardless of which party is right about plaintiff's birth date, even that claim was monetarily small. The claim to enhanced benefits of $1.01 per month is smaller yet. Therefore, the prospect of a large recovery was not "sufficiently bright to attract competent private counsel on a contingent fee basis," *Zarcone v. Perry*, 581 F.2d 1039, 1044 (2d Cir.1978), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979), and an attorneys' fee award is justified here, assuming other factors are consistent with such an award.

█ The rates at which plaintiff's counsel should be compensated does not depend on whether they work for a profit making or a nonprofit entity. In *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), the Supreme Court held that, "[t]he statute and legislative history establish that 'reasonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant

community, regardless of whether plaintiff is represented by private or nonprofit counsel." However, if the rates for assessing fees are those of the marketplace, so too are the other relevant standards those of the marketplace. In particular, " '[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Eckerhart*, 461 U.S. at 434, 103 S.Ct. at 1940, quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C.Cir.1980) (*en banc*) (emphasis in original). Thus, to the extent plaintiff's counsel spent their time pursuing a result that was already within their grasp, or otherwise spent time that was not warranted, their adversaries should not be obligated to underwrite that unnecessary activity any more than their client would be.

### III.

#### A.

As mentioned, marketplace standards apply both to the hourly rate at which fees may be charged, and to the number of hours that may be billed. With respect to the rate, "the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of comparable skill, experience, and reputation." *Stenson*, 465 U.S. at 896 fn. 11, 104 S.Ct. at 1547 fn. 11.

█ The four lawyers who worked on the case for plaintiff, and the hourly fees they seek, are Jonathan Weiss ($300), Roger Clisham ($275), Edgar Pauk ($250) and Anthony Feldmesser ($175). The first three, Messrs. Weiss, Clisham and Pauk, were awarded $250 per hour earlier this year for their time in *Weaver v. New York City Employees' Retirement System*, 88 Civ. 2662 (MBM), 1991 WL 24320 (Feb. 20, 1991). Weiss avers that he now bills his time at the rate of $300 per hour and will request that rate in other cases, and that he has been informed that a law firm would bill his time at $400 per hour. Weiss 9/24/91 Aff. ¶¶ 4, 5. Clisham presents only his background as justification for the

rate he seeks, and offers no explanation for why he should receive $25 more per hour than he received the last time. Pauk mentions four cases, including *Weaver*, where he is litigating pension issues and has received or expects to receive $250 per hour. There is no evidence beyond the affidavits themselves, which are insufficient under *Stenson, supra*, to justify a rate beyond what these lawyers received in *Weaver*. To fill the gaps in lawyers' submissions, a court may "interject its own knowledge" to arrive at a correct billing rate. *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1059 (2d Cir.1989). Accordingly, the time of Messrs. Weiss, Clisham and Pauk will be compensated at the rate determined in *Weaver*, $250 per hour.

■ Feldmesser is a 1988 honors graduate of Cardozo School of Law whose law school education included two years of clinical training in the representation of indigent elderly and disabled persons. Feldmesser 9/12/91 Aff. ¶¶ 3, 6. Based on his experience he avers a belief that a rate of $175 per hour is appropriate here. In *Merriwether v. Coughlin*, 727 F.Supp. 823 (S.D.N.Y.1989), a 1987 law school graduate received a rate as high as $130 per hour, although his time was compensated at $85 per hour for work at an earlier stage of the case. Based on the rate awarded in *Merriwether*, and considering Feldmesser's clinical experience, his time will be compensated at a rate of $125 per hour.

### B.

■ As set forth in section I above, plaintiff could have obtained in April 1990 all the relief she clearly deserved and all the relief she has since been granted. Fees for time spent past that date would not properly be charged to plaintiff; therefore, no fees will be awarded for time spent past April 1990. Moreover, time spent before that date must be trimmed substantially, as set forth below.

At the initial stage of the case, Feldmesser spent 5.1 hours meeting with plaintiff and otherwise investigating the facts. That reasonable expenditure of time for the most part preceded a three-hour meeting on January 10, 1990 attended by all four lawyers, for purposes of discussing the case. Discussion of the preparation of the complaint in this case, if that was what went on at the meeting, should not have consumed a three-hour discussion by four lawyers. A one-hour discussion by two lawyers would have been more like it. One of those lawyers would be the junior-most member of the team. The other presumably would be the most experienced member of the team, Weiss.

Feldmesser then spent 30.5 hours drafting and redrafting the complaint, in addition to 4.9 hours spent consulting with his colleagues before the complaint was filed. Weiss spent 3.5 hours reviewing the complaint; Clisham spent 5.25 hours in such review. At most, 15 hours of drafting and two hours of review and consultation with two senior colleagues should have been all that was necessary to draft this complaint. Another hour of miscellaneous pre-filing activity by Feldmesser, engaging a half hour each of the time of two senior colleagues, also would be reasonable.

■ That yields 19 hours of Feldmesser's time at $125 per hour, or $2375, and six hours of the time of senior attorneys at $250 per hour, or $1500. That computation includes the time reasonably spent until defendants offered plaintiff the relief she ultimately won at high and unnecessary cost. Had she accepted defendants' offer, it is certain that more time would have to have been expended in reducing an agreement to writing and terminating the lawsuit. Of course, that did not happen. There is precedent for awarding to a plaintiff the expenses incidental to hypothetical employment when the plaintiff is dismissed from employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq. Proulx v. Citibank, N.A.*, 681 F.Supp. 199, 205 (S.D.N.Y.), *aff'd without op.*, 862 F.2d 304 (2d Cir.1988); *Thomas v. Cooper Industries, Inc.*, 627 F.Supp. 655, 668 (W.D.N.C.1986). There is every reason to apply the same principle to an award of attorneys' fees and to permit an award for hypothetical time well spent, particularly when compensation is being denied for time actually but badly spent. Accordingly, plaintiff will recover also the reasonable cost of reducing a settlement to writing and terminating the lawsuit, which

I find would have been three hours by junior counsel, including time spent explaining the circumstances to the client, and two hours by one senior counsel, including time to review necessary documentation and to consider the propriety of the settlement itself. Three hours of Feldmesser's time would add an additional $375, and two hours of the time of more senior counsel would add $500.

It bears mention that plaintiff requested no disbursements. The circumstances here do not permit me to do anything but speculate on what the amount of reasonable disbursements would have been, but I must assume that plaintiff's failure to apply for disbursements means that they were negligible.

For the reasons stated above, plaintiff will recover total fees of $4750.

SO ORDERED.