Luther M. RAGIN, Jr., Deborah Fish Ragin, Renaye B. Cuyler, Jerome F. Cuyler and Open Housing Center, Inc., Plaintiffs,

v.

The HARRY MACKLOWE REAL ESTATE CO. and Harry Macklowe, Defendants.

No. 88 Civ. 5665 (RWS).

United States District Court, S.D. New York.

Dec. 9, 1994.

---

Steptoe & Johnson (Roger E. Warin, Mindy A. Kaiden, of counsel), Washington, DC, Lefrak & Holman, P.C. (Thomas A. Holman, of counsel), New York City, NAACP Legal Defense and Educational Fund, Inc. (Eric Schnapper, of counsel), Washington, DC, for plaintiffs.

Robinson Silverman Pearce Aronsohn & Berman (George B. Yankwitt, Suzanne M. Berger, of counsel), New York City, for defendants.

## OPINION

SWEET, District Judge.

The plaintiffs, Luther M. Ragin, Jr., Deborah Fish Ragin, Renaye B. Cuyler, Jerome F. Cuyler (collectively, the "Individual Plaintiffs") and the Open Housing Center, Inc., (the "OHC") (the OHC and the Individual Plaintiffs are referred to collectively as the "Plaintiffs") have moved this Court for an order of attorneys' fees in favor of Plaintiffs pursuant to the opinion and mandate of the Second Circuit on September 29, 1993. *See Ragin v. Macklowe*, 6 F.3d 898 (2d Cir.1993).

Plaintiffs' motion for attorney fees is granted, subject to the limitations set forth below.

### Prior Proceedings

The facts and prior proceedings in this action are fully set forth in the following cited opinions, familiarity with which is assumed. *See Ragin v. Macklowe*, 126 F.R.D. 475 (S.D.N.Y.1989) ("*Ragin I* "); *Ragin v. Macklowe* 801 F.Supp. 1213 (S.D.N.Y.1992) ("*Ragin II* "); *Ragin v. Macklowe*, 6 F.3d 898 (2d Cir.1993) ("*Ragin III* "). A review of those facts and prior proceedings relevant to this motion is presented below.

The Plaintiffs commenced this action in federal district court for damages and injunctive relief in August of 1988, alleging that defendants The Harry Macklowe Real Estate Co. ("HMRE"), Harry Macklowe ("Macklowe"), and Elfon Realty Co. ("Elfon") (collectively, the "Defendants") violated section 804(c) of the Fair Housing Act, 42 U.S.C. § 3604(c) (1988) (the "FHA" or the "Act"). The gravamen of the Plaintiffs' complaint was that the Defendants' placement of display advertising for residential apartments in

The New York Times violated the Act's prohibition against racial discrimination in residential housing advertising because all of the models portrayed in the advertisement were white.

Although the complaint in this case was filed on August 12, 1988, the controversy between the parties began in 1986. At the request of Plaintiffs, Kerry A. Scanlon ("Scanlon") (then counsel at NAACP Legal Defense Fund) ("NAACP–LDF") began preliminary investigations and research to remedy advertising deemed to be discriminatory under the Act.

In 1987, Plaintiffs filed an administrative complaint with the New York Division of Human Rights, alleging that the Harry Macklowe Organization ("HMO") had conducted unlawful discrimination in its advertising campaign. In May of 1988, the Agency found probable cause against HMO and recommended that a public hearing be held. There was no public hearing, and no further action was taken by or before the Division of Human Rights.

Shortly after the Agency finding, this litigation was commenced finally culminating in a fourteen day trial with an advisory jury (*See Ragin II* ). Judgment was entered in favor of the Plaintiffs on August 25, 1992. The court determined that HMRE and Macklowe had violated the Fair Housing Act. *Ragin II*, 801 F.Supp. at 1230–32. Damages of $2,500 were awarded to each individual plaintiff and $20,000 in compensatory damages to OHC. *Id.* at 1233–34. The Court, following the advisory verdict of the jury, declined to award punitive damages. *Id.* at 1234–35. In addition to compensatory damages, the Court issued a permanent injunction providing broad relief. The injunction enjoins the defendants, their officers, agents, servants and employees from:

making, printing, publishing, or causing to be made, printed, or published ... any advertisement [of any type] with respect to the sale or rental of housing or a dwelling which violates § 3604(c) of the Fair Housing Act, 42 U.S.C. § 3604(c), and indicates any preference, limitation or discrimination based upon race or color, or an intention to

make such a preference, limitation, or discrimination or that the housing or dwelling being advertised is not open to all without regard to race or color.

Judgment, October 19, 1992.

Prior to submission of a formal fee application by Plaintiffs, an order of October 19, 1992 was entered supplementing the findings of fact and conclusions of law, and stating that in view of the "financial ability of the plaintiffs" and "the nature of the action and relief granted," counsel fees were not appropriate to further the purposes of the Fair Housing Act. Order, October 19, 1992.

The Plaintiffs appealed, among other issues, the denial of attorneys' fees. The Court of Appeals affirmed the findings and conclusions of law with respect to liability, compensatory damages and punitive damages, as well as the scope of injunctive relief. *Ragin III*, 6 F.3d 898, 911. The Court did not agree, however, with the method used by this Court to deny all attorneys' fees and remanded the attorneys' fees issues for further proceedings stating:

> ... the district court improperly declined to apply the amendment in determining whether plaintiffs were entitled to attorney's fees for legal work performed after the effective date of the amendment ... [A] remand is required also to determine whether the plaintiffs met the criteria established in the unamended statute for attorney's fees incurred prior to the effective date of the amendment.

*Ragin III* at 911.

After the remand, a November 10, 1993 conference established that Plaintiffs would file a fee application on or before December 22, 1993. Defendants were then to respond by January 26, 1994 and Plaintiffs were to file a reply by February 4, 1994. Oral argument was scheduled for February 9, 1994.

Plaintiffs filed a fee application of December 22, 1993, but, a week later, Plaintiffs filed an amended application ("Base Application"). In that Base Application, Plaintiffs sought compensation for 2,587.39 hours resulting in a fee of $557,530.53, together with disbursements of $45,667.13. The Base Application did not contain any contemporaneous time

records, nor did it contain receipts in connection with the disbursements sought. The motion claimed to seek reimbursement for only 70 percent of the work done on the appeal and to exclude legal work done on the punitive damages section of the original claim, since Plaintiffs did not prevail on this issue at trial or on appeal.

Thereafter, on January 12, 1994, Plaintiffs served their First Set of Interrogatories and Request for Production of Documents on Attorneys' Fees. Responses to those Discovery Requests were due on February 11, 1994, two days after oral argument.

Defendants filed their Opposition Brief on January 26, 1994 arguing that Plaintiffs had not met their burden demonstrating OHC's inability to pay pre-amendment fees and asking for a denial, or the alternative for a substantial reduction in post-amendment fees to account for the minimal success of the action, to eliminate fees affiliated with administrative hearings and reductions for failure of documentation, lack of specificity, duplication and repetition. Plaintiffs filed their reply on February 4, 1994. Plaintiffs agreed to reduce their application by an additional 43.45 hours including time spent on the punitive damage issue and time spent in court on the day a mistrial was declared for failure to withdraw counsel before jury selection began.

On February 8, 1994 Defendants responded to the new information by letter to the Court. In that letter Defendants cite numerous expenses allocated by Plaintiffs counsel's firm of Lefrak & Holman that did not relate to this case.

At the hearing on February 9, Plaintiffs were ordered to provide Defendants with their contemporaneous time records, rather than the "recharacterized" versions initially submitted. The hearing was adjourned to allow Defendants to review those records.

It was soon revealed that Plaintiffs did not have the actual time records to support entries for Scanlon totalling 242 hours for which they sought approximately $66,770 in fees. Rather the Base Application contained "summaries" based upon Scanlon's recollection and the time records of others. Defen-

dants made objections to some of these entries in a letter dated February 15.

Oral argument was heard on February 16, and decision was reserved.

On March 15, 1994 Plaintiffs sent a letter to the Court stating that the Defendants' response to their Discovery Request was inadequate. Plaintiffs also indicated that they would reduce the number of hours for which compensation was being sought. They reduced their fees by 19.60 hours in response to specific instances of duplication or transcription errors that were pointed out to them and this Court by Defendants. An additional 7.5 hours were deducted for hours attributable to another case. Finally, Plaintiffs reduced by 20% the remaining fees attributable to the trial work done by the lawyers at the firms of Hill Betts & Nash, Summit Solomon & Feldesman, and LeFrak & Holman, P.C. who were associated with Thomas A. Holman ("Holman") one of two principal counsel for the Plaintiffs in this case.

Defendants responded by letter dated March 25 and on April 13 oral argument was heard on discovery issues related to the fee application. At the hearing, Defendants were ordered to supplement their February 11 response by providing Plaintiffs with the number of hours recorded by Defendants' attorneys in connection with this lawsuit. Plaintiffs were given permission to submit additional information in support of the Base Application.

Defendants supplemented their discovery response. Plaintiffs filed a Supplemental Submission on June 29. Defendants submitted a reply on July 29. Plaintiffs' response was filed on August 9. The Base Application was restored to the Calendar as of August 24, 1994. The final application was for $474,149.68 in fees and $47,889.27 in expenses including interest.

On September 14, 1994 Defendants submitted a brief in lieu of further oral argument in opposition to Plaintiffs' application for attorneys fees. The application for fees was considered fully submitted as of September 28, 1994.

*Discussion*

Two issues are before this Court: first, whether the Plaintiffs are entitled to fees for the legal work done prior to the amendment and second, whether they are entitled to fees for work done after the amendment. Both issues are considered in a belated effort to comply with the Supreme Court's admonishment that "[a] request for attorneys' fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983).

On a fee application, the claimant has the initial burden of documenting and proving its claims. *Id.* In light of the papers and hearings on Plaintiffs' fee application, their fee application is granted in part as discussed below:

**I. The Mandate Requires Consideration of Both Pre and Post Amendment Fees**

Prior to 1988, a district court could award "reasonable" attorneys' fees to a prevailing plaintiff in an FHA action if the plaintiff was "not financially able to assume said attorney's fees." 42 U.S.C. § 3612(c) (1982). ("Pre-amended Act") The amendments to the Act, effective March 18, 1989, provide that a district court "in its discretion, may allow the prevailing party ... a reasonable attorney's fee and costs." 42 U.S.C. § 3613(c)(2) (1988). ("Amended Act"). There is no mention of ability to pay in the amended statute.

The Court of Appeals held that this Court "properly applied the unamended statute to legal services performed prior to the effective date of the amendment." *Ragin III*, 6 F.3d at 911. It went on to say, however, that in the absence of sufficient proceedings on the issue of Plaintiffs' ability to pay, "a remand is required ... to determine whether the plaintiffs met the criteria established in the unamended statute for attorneys' fees incurred prior to the effective date." *Id.*

With regard to legal services provided after the amendment, the Court of Appeals remanded the case to determine "whether plaintiffs were entitled to attorneys' fees for legal work performed after the effective date of the amendment ..." *Id.*

Consistent with the Court of Appeals order, determinations regarding reasonable attorneys' fees prior to and after the effective date of the amended act must be made. Pursuant to the statute, the legal fees incurred before the effective date of the amendment will be paid by the defendants only if the plaintiffs' are unable to pay them. Any attorney's fees deemed appropriate for work performed after the effective date will be paid by defendants without regard to the plaintiffs' ability to pay. *Ragin III*, 6 F.3d at 910–11. *See Cabrera v. Jakabovitz*, 24 F.3d 372, 392–93 (2d Cir.1994) (confirming that the Amendment eliminated the financial need requirement).

## II. Plaintiffs are Able to Pay Pre-Amendment Fees

■ Plaintiffs suggest that the amount of attorneys' fees incurred during the pre-amendment period is $17,292.00. (Pls.' Amended Br. at 13) and that pre-amendment expenses during this period were at least $330.53 (Id.). Plaintiffs suggest that one third of these fees and expenses, or $5,764.00 in fees and $110.18 are attributable to OHC. The one-third portion, was arrived at by estimates of Plaintiffs' fee counsel regarding the special claims of the institutional plaintiff. (Pls.' Reply at 6 n. 3) OHC was one of six original Plaintiffs and one of five Plaintiffs that proceeded to trial. Without further description from counsel segregating the fees attributable to the institutional plaintiff, it is appropriate that one fifth of the fees be paid by OHC.

At the time of trial the four individual Plaintiffs were: Luther Ragin, a lawyer with degrees in law and public policy from Harvard University, who was the Chief Financial Officer of Earl Graves, Ltd.; Deborah Fish Ragin, an employee of Beth Israel Medical Center, who held a masters and a doctoral degree from Harvard University; Renaye Cuyler, a speech pathologist and a lawyer, with a J.D. from Fordham Law School, who was a practicing attorney at her own law firm specializing in personal injury; and Jerome Cuyler, a physician, with an M.D. from Cornell University Medical College, employed as the Associate Director of Brooklyn Jewish Hospital.

The Institutional plaintiff was OHC. OHC is a not-for-profit corporation headquartered in New York City. OHC provides a wide range of services with respect to housing in the New York Metropolitan area, which include providing outreach, and investigation with respect to discriminatory practices in housing.

## Pre–Amendment Fees are Subject to the Same Reductions for Inaccurate Record Keeping, Time Spent on Administrative Hearing and Limited Success

■ The pre-Amendment statute authorizes the court to award "reasonable attorneys fees ..., provided, that the plaintiff is not financially able to assume said attorney's fees". 42 U.S.C. § 3612(c) (1982). The first step, therefore, is to determine what reasonable attorneys' fees would be. The second step will be to determine whether or not the plaintiff can pay those fees.

Reductions to the total amount of fees requested in the "Base Application" should be made consistent with the discussion that follows in the Post–Amendment fees section. This will include reductions for inaccurate record keeping, elimination of fees related to work done in preparation for the administrative proceedings and a reduction for limited success in the trial portion of this action.

The result of these reductions is that the Pre–Amendment fees requested by Plaintiffs are reduced to $4,177.

■ The OHC share of that bill for fees will be $835.40. OHC has not demonstrated that it is unable to pay its proportionate share of pre-Amendment fees. In fact, Ms. Spiro's affidavit states that OHC's income exceeded its expenses by $8,582 in 1988 and by $14,596 in 1989. Spiro Second Aff. ¶¶ 2, 3. This is more than enough money to pay this fee or the $5,706.36 that Plaintiffs originally determined to be OHC's share.

In their original motion, Plaintiffs did not ask for $11,585.64 (67%) that they evidently attributed to the individual Plaintiffs and which these Plaintiffs were willing to pay. After making reductions in line with this opinion, the total fees allocated to the individ-

ual Plaintiffs are only $3,342. Since they conceded their ability to pay the $11,585.64 fees, this lower fee is also affordable.

For the reasons described above, all of the pre-Amendment fees will be paid by Plaintiffs.

### $191,184 of Post Amendment Fees will be Paid by Defendants

#### Lodestar Calculation

█ Generally, in awarding attorneys' fees under federal civil rights fee-shifting statutes, courts are directed to use the lodestar method. *Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). The law of this Circuit further specifies that "the starting point of every fee award … must be a calculation of the attorney's services in terms of the time he [or she] has expended on the case." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) (*"Grinnell"*). In *Grinnell*, the Court of Appeals established what is known as the lodestar approach whereby a court multiplies the number of hours reasonably expended by a reasonable hourly rate to arrive at a reasonable attorneys' fee award. *Grinnell*, 495 F.2d at 470–71.

After at least five rounds of briefs and lengthy letters, Plaintiffs requested $474,-149.68 in attorney fees. This represented a $115,566.67 reduction from the original request. The reductions included $7,739.75 to account for duplicative billings and items reduced as the result of the 2/16/94 hearing and $66,588.35 of across the board reductions offered by Plaintiffs in response criticism of duplicative and error-filled billing records.

At the end of the day, and now evening, there must be further reductions to account for some excess in billing rates, inadequate documentation of fees and limited success at trial and on appeal.

Plaintiffs' Base Application, modified over the course of the proceedings, requested the following fees [1]:

| Name | Grad. Year | Rate | Hours |
|---|---|---|---|
| **Hill Betts & Nash** | | | |
| Pre–Amendment time | | | |
| Thomas A. Holman | 1972 | $ 275 | 14.6 |
| Post Amendment time | | | |
| Thomas A. Holman | 1972 | $ 275 | 28.96 |
| | | | |
| **Summit Solomon and Feldesman (all Post Amendment time)** | | | |
| Thomas A. Holman | 1972 | $ 275 | 14.52 |
| Katherine J. Fritz | 1985 | $ 195 | 39.44 |
| Byron O. Brissett | Law Clerk | $ 75 | 3.8 |
| | | | |
| **Lefrak & Holman (all Post–Amendment time) Trial:** | | | |
| Thomas A. Holman | 1972 | $ 275 | 434.04 |
| Alla Roytberg | 1991 | $ 125 | 463.84 |
| Marsha Beil | 1972 | $ 275 | 66.48 |
| Louis Wollin | 1981 | $ 175 | 3.20 |
| Christina Williamson | Paralegal | $ 75 | 64.00 |
| | | | |
| Appeal [2]: | | | |
| Thomas A. Holman | 1972 | $ 275 | 65.91 |
| Alla Roytberg | 1991 | $ 125 | 46.13 |
| Marsha Beil | 1972 | $ 275 | 16.10 |
| | | | |
| **NAACP Legal Defense Fund** | | | |
| **Pre–Amendment time** | | | |
| Kerry Scanlon (Macklowe time) [3] | 1977 | $ 275 | 19.15 |
| Kerry Scanlon (10% of general time) [4] | 1977 | $ 275 | 26.09 |
| | | | |
| **Post–Amendment time Trial:** | | | |
| Kerry Scanlon (Macklowe time) | 1977 | $ 275 | 464.1 |
| Kerry Scanlon (10% of general time) | 1977 | $ 275 | 3.19 |
| Collette Matzzie | law student | $ 75 | 112.00 |
| | | | |
| Appeal: | | | |
| Kerry Scanlon | 1977 | $ 275 | 105.49 |
| Eric Schnapper | 1968 | $ 325 | 108.8 |
| Cornelia Pillard | 1987 | $ 200 | 129.5 |
| Marianne Merritt | law student | $ 75 | 23.03 |

Reductions are made from this base in line with the following discussion:

1. The hours reported have been calculated by deducting specific amounts from the base application as conceded by plaintiffs counsel at various points in the documentary trail. In addition, 20% has been deducted for the sub total for each attorney employed by Hill Betts & Nash or Lefrak & Holman, consistent with plaintiffs' representation after the February 16 hearing and subsequent papers. Finally 24% was deducted from the hours of every attorney employed by Summit Solomon and Feldesman. This results from the 5% reduction offered by plaintiffs in their initial base application and the additional 20% taken across the board for the firm.

2. The hours were calculated by taking the total that appears in the Base application and deducting any itemized deductions.

3. Includes only the time that Scanlon attributes solely to this case.

4. These hours reflect 10% of the time spent on administrative proceedings that preceded this case and 9 other actions filed by plaintiffs.

### Prevailing Plaintiff

■ The Supreme Court's recent fees jurisprudence has identified "[t]he touchstone of the prevailing party inquiry [to] be the material alteration of the legal relationship of the parties...." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93, 109 S.Ct. 1486, 1494, 103 L.Ed.2d 866 (1989). Thus, "to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of [the] claim. The plaintiff must obtain an enforceable judgement against the defendant from whom fees are sought." *Farrar v. Hobby*, —— U.S. ——, ——, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992) (citing *Hewitt v. Helms*, 482 U.S. 755, 760, 107 S.Ct. 2672, 2675–76,· 96 L.Ed.2d 654 (1987)).

Because Plaintiffs prevailed at trial with respect to issues of liability, compensatory damages and injunctive relief, they are found to be prevailing parties within the meaning of the FHA and fees are to be awarded subject to the limitations set forth below.

### I. Reasonable Hourly Rates [5]

■ In setting the hourly rates of attorney fees—including those for nonprofit legal organizations—it is well settled that courts are to use the prevailing market rates of the relevant legal community. *See Blum v. Stenson*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984) (holding attorneys must demonstrate their fees are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."); *Di Filippo v. Morizio*, 759 F.2d 231, 235 (2d Cir.1985) (noting "the fact that the hourly rates governing fee awards to non-profit legal services organizations are calculated according to prevailing private market rates").

The relevant community for a fee determination is the judicial district in which the trial court sits, *see In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir.1987), in this case, the Southern District of New York. *See also Miele v. New York*

*State Teamsters Conference Pension & Retirement Fund*, 831 F.2d 407, 409 (2d Cir. 1987) (judge may determine reasonable fees based on his or her knowledge of prevailing community rates); *Loper v. New York City Police Dept.*, 853 F.Supp. 716, 720 (S.D.N.Y. 1994) (awarding solo practitioner with offices in both Manhattan and Hoboken at a rate commensurate with the Southern District litigation) (*"Loper"*); *McGuire v. Wilson*, 87 Civ. 6161, 1994 WL 68222, at *3, 1994 U.S.Dist. LEXIS 2000, at **7–9 (S.D.N.Y. Feb. 28, 1994) (awarding Long Island law firm fees at New York City rate levels for Southern District litigation) (*"McGuire"*); *Shlomchik v. Richmond 103 Equities Co.*, 763 F.Supp. 732, 743–44 (S.D.N.Y.1991) (awarding suburban Philadelphia attorney a higher New York City rate as action was litigated in the Southern District).

### Lead Counsel's Fees

■ Lead counsel Scanlon litigated this action in the Southern District of New York in his capacity as a cooperating attorney with the NAACP–LDF, a nationally renowned civil liberties and civil rights organization. The relevant market place is New York City.

Plaintiffs' counsel supports his $275 an hour rate request with documentation as to his qualifications, background, training as well as information concerning his expertise in the area of voting rights and civil rights litigation. (*See* Scanlon Decl., Ex. 12 appended to Plaintiffs' Motion). Scanlon is a graduate of Harvard College and Antioch Law School, a seasoned housing and employment discrimination litigator, with fifteen years of litigation experience. Plaintiffs' counsel has submitted declarations from partners at Paul, Weiss, Rifkind, Wharton & Garrison and from Goldman & Hafetz which support fees of $450 and $275 dollars per hour for Scanlon. (Exs. 13(D) and (E) appended to Plaintiffs' Motion).

Accordingly, Scanlon will be awarded an hourly fee of $275 per hour, the rate he requests and a rate commensurate with fee awards at the partner level in this District.

---

**5.** The Second Circuit permits an award of current rates as a measure of compensation for delay. *Grant v. Martinez*, 973 F.2d 96, 100 (2d Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 978, 122 L.Ed.2d 132 (1993).

*See, e.g., Davis v. City of New Rochelle,* 156 F.R.D. 549, 558 (S.D.N.Y.1994) (awarding a seasoned voting rights litigator with fourteen years of litigation experience a fee right of $300 per hour); *Pierce v. F.R. Tripler & Co.,* 770 F.Supp. 118, 121 (S.D.N.Y.1991) (awarding Judith Vladeck, "widely recognized as an expert in the field of employment discrimination litigation," a fee rate of $300 per hour), *modified on other grounds,* 955 F.2d 820 (2d Cir.1992); *Loper,* 853 F.Supp. at 720 (awarding $250 per hour to acknowledged First Amendment litigator and solo practitioner with "intermediate" experience); *Soler v. G & U, Inc.,* 801 F.Supp. 1056, 1066 (S.D.N.Y. 1992) (awarding Farmworker Legal Services of New York attorneys fees ranging from $185 to $250 per hour).[6]

### Mr. Schnapper, Ms. Pillard, and Mr. Holman

■ Eric Schnapper ("Schnapper") is a 1968 graduate of Yale Law School and has worked at the Legal Defense Fund since 1969. He has also been a lecturer at Columbia Law School since 1978. He has argued eight times in the United States Supreme Court, has written briefs on the merits of 39 Supreme Court cases and amicus briefs in 27 other Supreme Court cases. He is one of the country's premier appellate lawyers in the field of civil rights. (Scanlon's Aff. ¶ 22, Ex. 12 appended to Plaintiffs' Motion).

On the basis of the experience recited in Scanlon's Declaration (Ex. 12 appended to Pls.' motion), the Topkis affidavit (Ex. 13 D appended to Pls.' motion), the Necheles Declaration (Ex. 13 E appended to Pls.' motion), and the New York Market Rate Surveys (Ex. 13 A–C appended to Pls.' motion) and based on the rationale set forth above, Schnapper will be reimbursed at a rate of $300 per hour. This is in line with other seasoned litigators in this district.

6. *Cf. Monaghan v. SZS 33 Assocs., L.P.,* 154 F.R.D. 78, 85 (S.D.N.Y.1994) (awarding fee range $250 to $300 for experienced partners; $120 to $180 for associates over three year time period); *McGuire,* 1994 WL 68222, at *3, 1994 U.S.Dist. LEXIS 2000, at **7–9 (awarding fee range $190 to $225 per hour for partners, and $105 to $160 for associates for two year time period); *Ortiz v. Regan,* 777 F.Supp. 1185

■ Cornelia Pillard ("Pillard") will be reimbursed at a rate of $175 per hour, rather than at the rate of $200 per hour suggested by Plaintiffs. Pillard, currently an NAACP–LDF attorney, is a 1987 graduate of Harvard Law School. She has been a contributing or principal author of briefs in five Supreme Court cases and has briefed and/or argued appeals in nine cases in the U.S. Courts of Appeals. (Scanlon's Decl. ¶ 23) Pillard will be paid at a rate consistent with that of her colleagues from the private firms that provided co-counsel. *See* Holman Aff. ¶ 23. At Summit Solomon & Feldesman 1985 law school graduates were billing at a rate of $195 per hour and 1988 graduates at a rate of $165 per hour. $175 per hour puts Pillard right on this scale.

■ Holman and his associates do not pose the same problems of valuation posed by the NAACP–LDF attorneys. These attorneys are employed by private firms that set rates for federal court litigation. Holman's Affidavit, ¶ 23. The attorneys employed by the firms with which Holman was associated during the course of this litigation will be reimbursed at their requested rates.

### Law Students and Paralegals

■ The Defendants claim that a $75 per hour fee award for law students and paralegals is excessive. However, paralegal and law clerk billing rates ranging from $70 to $85 per hour are acknowledged to be well within reason. *See, e.g., Missouri v. Jenkins,* 491 U.S. 274, 286–89, 109 S.Ct. 2463, 2470–72, 105 L.Ed.2d 229 (1989) (holding paralegals and law clerks may be billed separately at market rates pursuant to local market practice); *see also U.S. Football League v. National Football League,* 887 F.2d 408, 416 (2d Cir.1989); *Davis v. New Rochelle,* 156 F.R.D. at 558–59 (awarding law student fees of $75 per hour); *McGuire,* 1994 WL

(S.D.N.Y.1991) ($250 per hour), *aff'd in part, rev'd in part, remanded,* 980 F.2d 138 (2d Cir. 1992); *Carrero v. New York City Hous. Auth.,* 685 F.Supp. 904 (S.D.N.Y.1988) ($150 per hour for less experienced attorneys), *remanded,* 890 F.2d 569, 581–82 (2d Cir.1989); *Wilder v. Bernstein,* 725 F.Supp. 1324 (S.D.N.Y.1989) ($200–250 per hour for work performed in 1987–89), *rev'd on other grounds,* 944 F.2d 1028 (2d Cir.1991).

68222, at *3, 1994 U.S.Dist. LEXIS 2000, at ** 8–9 (awarding paralegals fee range of $70 to $85 per hour).

Accordingly, Marianne Merritt and Collette Matzzie will be compensated at the requested $75 per hour for time spent while they were law students and Christina Williamson will be compensated at the requested $75 per hour for time spent as a paralegal.

Based on these determinations, the lodestar amount for the fees sought by the Plaintiffs is reduced by $5,975.50.

## II. The Lodestar will be Reduced by 30% Across the Board for Failures to Describes Services Rendered With Adequate Specificity, for Duplicative Claims, and for Failure to Provide Contemporaneous Records

### Specificity

A fee application must be supported by contemporaneous time records which describe with specificity the work done. *New York State Assoc. for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir.1983). The "burden is on counsel to keep and present records from which the court may determine the nature of the work done, the need for it, and the amount of time reasonably required; where adequate contemporaneous records have not been kept, the court should not award the full amount requested." *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1265 (2d Cir.1987) (rejecting time records with two and three word descriptions for an entire day's work such as "reviewed docs." and "clients re: testimony"). The Supreme Court has found that "counsel, of course, is not required to record in great detail how each minute of his [or her] time was expended[,] but at least counsel should identify the general subject matter of his [or her] time expenditures." *Hensley*, 461 U.S. at 437 n. 12, 103 S.Ct. 1941 n. 12. The time records contain many vague phrases, most notably almost the entire record submitted by Schnapper. Given the interrelationship of issues and parties in complex litigation, ambiguity defeats the capacity to determine proper fee allocation.

With regard to Schnapper's records, the requirement for specificity has not been met with respect to 73.6 hours (92 hours on the time sheets reduced by 30% as the Plaintiffs have done) where the entry reads simply "research for brief," "research and draft brief," and "draft and edit brief." *Orshan v. Macchiarola*, 629 F.Supp. 1014, 1019 (E.D.N.Y.1986) (fees disallowed for time supported only by such vagaries as "prepare correspondence" and "review correspondence.").

Additional examples of vague entries include: "telephone call to S. Berger," "Review Macklowe files," "conference with T. Holman," "Telephone conference," "letter to Suzanne Berger," "research," "Telephone conference with Holman and Berger," "working travel to NY," "phone calls to NY," "continue to work on reply brief," "Research for reply brief."

### Contemporaneous Time Records

On June 15, 1983 the Second Circuit changed its previously stated preference for contemporaneous time records to a mandatory requirement. *See New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir.1983) (holding that "the difficulties raised by the lack of contemporaneous records in this case convince us of the need to announce for the future that contemporaneous time records are a prerequisite for attorney's fees in this Circuit.") ("*Carey* "). In its own summary of its ruling for the "guidance of the bar in future cases," the *Carey* Court stated that "[a]ll applications for attorney's fees ... for any work done after the date of this opinion should *normally* be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." *Id.* at 1154 (emphasis added).

Since *Carey*, the Court of Appeals has ruled that in accordance with New York law, "[t]he burden is on counsel to keep and present records from which the court may determine the nature of the work done, the need for it, and the amount of time reasonably required; where adequate contemporaneous records have not been kept the court should not award the full amount requested." *F.H.*

*Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1265 (2d Cir.1987).

As a general rule, a party seeking an award "should submit evidence supporting the hours worked and rates claimed. Where documentation of hours is inadequate, the district court may reduce the awards accordingly." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939. On this basis, the Circuit recently vacated a trial court's unquestioning acceptance of an attorney's hourly assessment unsupported by contemporaneous time records and remanded to the trial court for "further findings" on the question of the number of hours expended. *See Mar Oil, S.A. v. Morrissey,* 982 F.2d 830, 840 (2d Cir.1993).

On the other hand, the courts in this Circuit intermittently have seen fit to adopt roughly a 30% fee reduction rule for an attorney's failure to keep contemporaneous time records of their services. *See, e.g., Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10,* 749 F.2d 1000, 1008 (2d Cir.1984) (reducing attorney's hourly estimate which was unsupported by contemporaneous time records by 30%; noting much of the litigation occurred prior to *Carey* ); *Orshan v. Macchiarola,* 629 F.Supp. 1014, 1019 (E.D.N.Y.1986) (holding lack of contemporaneous time records "would justify a 30% reduction as a sanction for noncompliance . . . however, in light of the record and the case law the Court must disallow a larger number of hours.") (citation omitted); *Johnson v. Kay,* 742 F.Supp. 822, 836–37 (S.D.N.Y.1990) (accepting reconstructed time records, but reducing amount of award by 20% as a penalty); *Carrero v. New York City Hous. Auth.,* 685 F.Supp. 904, 908–09 (S.D.N.Y.1988) (denying 35% rate reduction for failure to provide contemporaneous time records to the court), *modified on other grounds,* 890 F.2d 569 (2d Cir.1989). *See also Hensley v. Eckerhart,* 461 U.S. 424, 438 n. 13, 103 S.Ct. 1933, 1942 n. 13, 76 L.Ed.2d 40 (1983) (affirming a reduction of 30% for hours billed due to inexperience of attorney

and failure to maintain contemporaneous records).

With regards to Scanlon's time, there are 242 hours for which there are no contemporaneous time records.

### Other Inaccuracies and Redundancies

During the more than five rounds of documentary submissions and in the two hearings held on the fees issue, Defendants have pointed out a significant number of errors in Plaintiffs' submissions, giving rise to a substantial question as to the accuracy, necessity or the singularity of the hours reported.

Many duplicative efforts remain in this record. For example, Beil ($275 per hour), Holman ($275 dollars per hour) and Schnapper ($300 per hour) all seek compensation for their attendance at the oral argument before the Court of Appeals. Other examples include multiple senior attorneys at depositions and at conferences with first year associates regarding discovery issues.

Every round of documents has resulted in reductions of some of the fees, including a 20% across the board reduction in all the trial hours billed by Holman and the other lawyers and paralegals at his firm. In light of the numerous entries which contain insufficient descriptions of the work done, a lack of contemporaneous records for a significant number of hours, duplicative billing and other errors found throughout the record, there will be a reduction of the lodestar of 30%.[7] There shall be only a 10% additional reduction in the *trial* fees requested by Holman's firms in consideration of the 20% reduction that they offered after the hearing on February 16. *See Cabrera v. Fischler,* 814 F.Supp. 269 (E.D.N.Y.1993), *rev'd in part on other grounds, and remanded* 24 F.3d 372 (2d Cir.1994) (reducing compensable number of hours by 30% "in light of the numerous entries which contained insufficient descriptions of the work done and the need for it"); *DeVito v. Hempstead China Shop, Inc.,* 831 F.Supp. 1037, 1045 (S.D.N.Y.1993) (40% lodestar reduction for duplication, insufficient description of some of the work done and ne-

---

7. These across the board reductions shall be made after adjusting the rates paid to Schnapper and Pillard.

cessity for such work, disallowance of travel time and the overall sum achieved); *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d at 1146 (5%–20% reductions made to multiple claims for fees upon objections to duplicative and excessive hours); *Meriwether v. Coughlin*, 727 F.Supp. 823, 871 (15% reduction for entries too vague to assess reasonableness).

### Fees for Prior Administrative Proceedings will not be Included

Fees submitted for work done during the administrative proceedings will not be reimbursed. These are designated as "Kerry Scanlon (10% of general time) (1986–1989)" in the Exhibits attached to the Base Application. The original 29.28 hours attributed to this category will be eliminated.

■■ Fees incurred in administrative proceedings are not recoverable under the Fair Housing Act in actions brought by private persons, 42 U.S.C. sec. 3613 (1988). Unlike Title VII actions, *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), or actions brought under the Age Discrimination in Employment Act ("ADEA") *Reichman v. Bonsignore, Brignati & Mazzota*, 818 F.2d 278, 282–83 (2d Cir. 1987), the administrative process under the Fair Housing Act is discretionary. *See also* Scanlon Decl., ¶ 7.

Title VII's fee provision, 42 U.S.C. § 2000e–5(k) provides that in any action or proceeding under this title the court . . . may allow . . . reasonable attorney's fees. 42 U.S.C. § 1988 also includes the "or proceeding" language in its fees section. Neither the pre or post Amendment fee section of the Fair Housing Act pertaining to private actions, include language indicating that attorney's fees incurred in administrative proceedings are covered.

These fees will not be covered.

### Fees for Attorneys Contributing Little to the Case Will be Eliminated

■■ In their Reply Memorandum Plaintiffs' withdrew the time previously submitted for attorneys who had worked only a few hours on this case. For the same reasons, Plaintiffs will not collect fees for Byron Brissett, a law clerk who is billing 3.8 hours, or for Louis Wollin, an attorney billing 3.2 hours.

### III. Reduction for the Limited Level of Success

■■ In *Farrar v. Hobby*, —— U.S. ——, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), the Court stated that " 'the most critical factor' in determining the reasonableness of a 'fee award' is the degree of success obtained." *Farrar*, —— U.S. at ——, 113 S.Ct. at 574 (*quoting Hensley*, 461 U.S. at 436, 103 S.Ct. at 1941). *See also Cabrera v. Jakabovitz*, 24 F.3d 372 (2d Cir.1994) (The Court of Appeals assumed, though did not decide, that *Farrar*'s standard, articulated in a 42 U.S.C. § 1988 attorney's fee case applied on a Fair Housing Act attorney's fee case).

■■ While the rule that attorneys' fees should only be awarded proportionate to the ratio between damages sought and actually obtained has been rejected, *Riverside v. Rivera*, 477 U.S. 561, 576–81, 106 S.Ct. 2686, 2695–97, 91 L.Ed.2d 466 (1986); *Grant v. Martinez*, 973 F.2d 96, 102 (2d Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 978, 122 L.Ed.2d 132 (1993), a court may consider the limited success in obtaining the relief being sought in exercising its discretion to adjust the amount of attorneys' fees to be awarded. *Farrar*, —— U.S. at ——, 113 S.Ct. at 574. Importantly, the fact that a plaintiff recovers only nominal damages does not, in and of itself, justify awarding low fees. The key consideration in determining whether a downward adjustment to the attorneys' fees being sought is appropriate is a "comparison between the relief sought and the relief granted by the court." *Myree v. Local 41*, 847 F.Supp. 1059, 1069 (W.D.N.Y.1994); *Hop Wah v. Coughlin*, 1993 WL 133721, *2 1993 U.S.Dist. LEXIS 5443, *5–6 (N.D.N.Y.1993).

"Where a plaintiff has achieved only partial or limited success, full compensation of attorney's fees would not be reasonable. [citation omitted] The district court may either attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *United States Football League v. National*

*Football League,* 887 F.2d 408, 414 (2d Cir. 1989).

As set forth above, there is no question but that Plaintiffs were the prevailing party at trial. Pursuant to *Farrar,* however, award reductions can be made based on the degree of success. Contrary to the characterization of Defendants that this case presented Plaintiffs with little more than a moral victory, the Plaintiffs were more than nominally successful at trial.

The Plaintiffs succeeded in obtaining injunctive relief and some compensatory damages. In line with *Grant v. Martinez,* it would be inappropriate to reduce the fees proportionately just because the Plaintiffs did not get the degree of compensatory damages that they sought. It is also true, however that they did not obtain injunctive relief that was as broad as they had hoped, and that the objective standard adopted by the court was one of an ordinary reader and not an ordinary black reader. *See Ragin II; Ragin III.* Furthermore, the law regarding the use of the ordinary reader standard and much of the progress made on the issue of the use of models in housing advertising was made in *Ragin v. New York Times,* 726 F.Supp. 953 (S.D.N.Y.1989), 923 F.2d 995 (2d Cir.1991), a companion case brought by the same Plaintiffs against the New York Times.

Plaintiffs have already reduced their further request by the hours they dedicated to the issue of punitive damages, on which they lost. If there was additional time that should have been deducted for punitive damages, the 30% across the board deduction for duplicative work will cover that portion of the lodestar.

It would be impractical to scrutinize the computer printouts and photocopied calendars for hours spent on the marginal relief that Plaintiffs did not get, due in part to the fact that much of Plaintiffs' counsel's work was spent on all of the Plaintiffs' claims, rather than one or two claims in particular. *Cabrera* 814 F.Supp. at 29 (adopting this method from *National Football League,* 887

F.2d at 414). Because their success on obtaining injunctive relief was not complete, the compensatory relief was less than requested, and because the objective standard of the "ordinary black reader" was not adopted, and because some of the significant law in this case was developed in the companion case, the lodestar for the trial phase of this case will be reduced by an additional 50%.[8] *See United States Football League v. National Football League,* 887 F.2d 408, 415 (2d Cir. 1989) (affirming district court's determination that bill be reduced by 20% to reflect a reasonable fee in light of the limited success achieved.); *Myree v. Local 41, International Brotherhood of Electrical Workers,* 847 F.Supp. 1059, 1068 (W.D.N.Y.1994) (reducing lodestar by 75% of time spent litigating losing issues in a Title VII case); *Cabrera,* 814 F.Supp. at 414 (reducing the lodestar amount by 10% for unsuccessful claims).

### Success on Appeal

■ In their initial motion, Plaintiffs offered to deduct 30% of their fees related to the appeal of this case. A reduction of 75% of the fees for the appeal is more appropriate. Plaintiffs appealed the calculation of compensatory damages, the failure to award punitive damages, and the failure to issue a strong enough injunction and to award attorneys fees. Plaintiffs succeeded only on the attorney's fees issues.[9] An additional 45% of the attorney fees dedicated to the appeal should be deducted from the base application after making the individual deductions described above.

### Plaintiff's Post–Amendment Fees Will be Paid as Follows:

| Name | Fees |
|---|---|
| **TRIAL FEES** | |
| Hill Betts & Nash | $ 3,584 |
| Summit Solomon and Feldesman | 5,258 |
| Lefrak & Holman | 90,190 |
| NAACP Legal Defense Fund | 47,610 |

---

8. The fees charged to the appeal will be evaluated separately below. This 50% across the Board reduction will only apply to the trial portion of the case.

9. Defendants lost on their cross-appeal when the Circuit Court upheld standing and liability.

APPEAL

| | |
|---|---|
| Lefrak & Holman | 11,044 |
| NAACP–LDF | 33,498 |
| | $191,184 |

## IV. Expenses

Plaintiffs claim $45,722.21 plus interest in expenses associated with this case. This includes $627.50 incurred by Hill & Betts, $4,416.20 by Summit Solomon & Feldesman, $32,097.78 by Lefrak & Holman, P.C. and $8,535.73 by NAACP–LDF.

In general, Plaintiffs' counsel at Lefrak & Holman has provided an adequate accounting of expenses which ties the purported expenses with a specified legal product. *See F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1269 (2d Cir.1987) (reducing award for expenses by 25% where records were "inadequate to permit a determination of the nature or timing of the activities that required most individual expenditures[.]"); *Carrero v. New York City Hous. Auth.,* 685 F.Supp. 904, 909–10 (S.D.N.Y. 1988) (disallowing fees for inadequate documentation of expenses), *modified on other grounds,* 890 F.2d 569 (2d Cir.1989).

NAACP–LDF provided receipts for $2,323.14 of expenses. For those expenses for which there is documentation they will be reimbursed in full.

 Upon review of Defendants' challenge to the expenses at Lefrak & Holman, P.C., (*see* Defs.' Reply to Pls.' Supp. Submission, pp. 58–59 and attachments), Plaintiffs' counsel are entitled to 75% of their expense claims, with the following exceptions, which will be excluded from the expenses entirely:

A reporter's bill for the deposition of Mallory in another case ($2,311.75) (Appen. to Pls.'s Reply Br. at 86 & 87); Payment of $575.00 to paralegal whose hours are also included in the fees section of the Base Application (p. 167) ($575.00); One-third of the cost of depositions obtained over the number permitted by the April 20, 1990 Standing order ($2,055.37).

The remainder of the expenses charged to this firm will be reduced by 25% due to the numerous inaccuracies in the record that have been pointed out by Defendants, not refuted by Plaintiffs and which certainly are only representative of the errors to be found. *See F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1269 (2d Cir.1987) (reducing award for expenses by 25% where records were "inadequate to permit a determination of the nature or timing of the activities that required most individual expenditures[.]")

 With respect to the expenses claimed at Hill Betts & Nash and Summit Solomon & Feldesman and the balance of the expenses claimed by NAACP–LDF, Plaintiffs will be entitled to collect 40% of the expenses including interest sought in the Base Application. This is proportional to the approximately 40% of fees requested that were awarded in this case and seems appropriate given the lack of documentation. *See, Cabrera,* 814 F.Supp. at 291 (expenses given in proportion to the proportion of fees awarded); *In re Agent Orange Prod. Liab. Litig.,* 611 F.Supp. 1296, 1381 (E.D.N.Y.1985), *aff'd in part and rev'd in part on other grounds,* 818 F.2d 226 (2d Cir.1987) (applying the same proportional reduction methodology).

## Conclusion

Plaintiffs' counsel's fee application is hereby granted in conformance with the findings set forth above. Settle order on notice.

It is so ordered.