Sylvia **RODRIGUEZ**, individually and on Behalf of her minor child, Les Andrew Kelly, Plaintiffs,

v.

Marjorie **McLOUGHLIN**, individually and as Executive Director of Cardinal McCloskey Children's and Family Services, Barbara McMurray, individually and as Foster Boarding Home Director of Cardinal McCloskey Children's and Family Services, Cardinal McCloskey Children's and Family Services, New York City Department of Social Services, New York City Child Welfare Administration, and the City of New York, Defendants.

No. 96 Civ.1986(KMW).

United States District Court, S.D. New York.

May 26, 1999.

Howard Seife, Chadbourne & Parke, LLP, New York City, for plaintiff.

Christopher H. Cloud, Capriano, Lichtman & Flach, LLP, New York City, for defendants McLoughlin, McMurray, Cardinal McCloskey Children's & Family Services.

Frances Sands, Michael D. Hess, Corporation Counsel, New York City, for New York City, defendants.

## ORDER

KIMBA L. WOOD, District Judge.

Plaintiffs brought suit pursuant to 42 U.S.C. § 1983, alleging deprivations of their procedural due process rights guaranteed by the Due Process Clause of the Fourteenth Amendment. Following a trial that ended on December 7, 1998, the jury awarded plaintiffs $50,002. Counsel for plaintiffs now move pursuant to 42 U.S.C.

§ 1988 for attorneys' fees in the amount of $773,00.50 and costs in the amount of $186,557.03. For the reasons stated below, the application is granted in part and denied in part. Counsel for plaintiffs are entitled to an award of fees and costs in the amount of $ 785,968.85.

## I. Discussion

The Court assumes familiarity with the facts of this case, particularly its Order of September 15, 1998, denying defendant's motion for summary judgment. That order was subsequently amended on January 6, 1999, to address issues unrelated to the present fee application (the "Amended Summary Judgment Order").

### A. Attorneys' Fees Awards Under § 1988

Under § 1988, in any action or proceeding to enforce § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). The district court has discretion in determining the amount of the fee award, based on its knowledge of the circumstances of the case. *See Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). This discretion is not unconstrained. "The starting point for the determination of a reasonable fee is the calculation of the lodestar amount.... In determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir.1999) (citing *Hensley*, 461 U.S. at 433–35, 103 S.Ct. 1933). The focus of the Court's inquiry, therefore, should be the determination of the appropriate lodestar amount.

Although this lodestar amount should be presumed to represent a reasonable fee, *see Orchano v. Advanced Recovery, Inc.*, 107 F.3d 94, 98 (2d Cir.1997), the Court may turn to "considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933 (citation omitted). However, these "factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Id.* at 434 n. 9, 103 S.Ct. 1933; *see also Greenbaum v. Svenska Handelsbanken, N.Y.*, 998 F.Supp. 301, 303–04 (S.D.N.Y.1998) (quoting *Hensley* ). Because several of the challenges defendants raise to the fee application address the reasonableness of plaintiffs' counsel's rates and the number of hours expended on this case, the Court will first consider whether defendants' claims should have any effect on the Court's calculation of the lodestar amount.

### B. Relationship Between Outcome and Award

Defendants suggest that a reduction in the lodestar amount is warranted for two reasons: first, the amount of damages awarded at trial was significantly smaller than the amount requested in fees; and second, many of plaintiffs' claims were dismissed in the Court's Summary Judgment Order. The Court will consider these claims in turn.

■ Defendants assert that the "extremely modest jury verdict" of "a token punitive damages award" compels a reduction of the lodestar amount. (*See* Def. Mem. at 21, 23; *see also id.* at 1 (contrasting "exorbitant award of attorneys' fees sought" with "the modest [jury] award of $50,002, less than the minimum diversity jurisdictional amount under the federal statutes.")) The amount of money plaintiffs recovered is plainly irrelevant to the present motion. In *United States Football League v. National Football League*, 887 F.2d 408, 415 (2d Cir.1989), the Second Circuit approved an award of attorneys' fees of $5.5 million dollars in a case in which plaintiffs were awarded a mere three dollars. *See id.* at 410–11. A few

months ago, the Second Circuit explicitly rejected an approach that would have reduced an attorneys' fees award on the basis of the amount of damages ultimately awarded at trial:

> Congress enacted fee-shifting in civil rights litigation precisely because the expected monetary recovery in many cases was too small to attract effective legal representation. *See City of Riverside v. Rivera,* 477 U.S. 561, 575, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (plurality opinion) ("Congress did not intend for fees in civil rights cases ... to depend on obtaining substantial monetary relief."). Were we to adopt the "billing judgment" approach that the district court advocates, we would contravene that clear legislative intent by relinking the effectiveness of a civil rights plaintiff's legal representation solely to the dollar value of her claim. As a near-unanimous Supreme Court reiterated in *Blanchard v. Bergeron,* 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989), "a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms," *id.* at 96, 109 S.Ct. 939 (quoting *Rivera,* 477 U.S. at 574, 106 S.Ct. 2686), and we are unwilling to hold that the plaintiff's attorney should calculate the value of her client's rights in just those "monetary terms."

*Quaratino,* 166 F.3d at 426 (internal citations omitted); *see also DiFilippo v. Morizio,* 759 F.2d 231, 235 (2d Cir.1985) ("We believe a reduction made on the grounds of a low award to be error unless the size of the award is the result of the quality of representation."); *Broome v. Biondi,* 17 F.Supp.2d 230, 241 n. 11 (S.D.N.Y.1997) ("The fact that third-party defendant's fee award is larger than the damages awarded to the plaintiff is irrelevant."). The fact that the requested fees are significantly greater than the amount plaintiffs recovered at trial should not, therefore, be part of the Court's analysis.

Defendants' more substantive objection is that because plaintiffs did not succeed on all their claims, counsel should not be permitted to seek fees for hours expended in support of these claims. Defendants argue that because plaintiffs did not prevail on their claim that defendants' failure to provide pre-removal notice and opportunity to be heard violated the Due Process Clause (*see* Amended Summary Judgment Order at 37), hours devoted to this claim should be excluded.

The Supreme Court has stated that " 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.' " *Farrar v. Hobby,* 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (quoting *Hensley,* 461 U.S. at 436, 103 S.Ct. 1933). Fees may be awarded for unsuccessful claims only when they are " 'inextricably intertwined' " or " 'involve a common core of facts or [are] based on related legal theories.' " *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1183 (2d Cir.1996) (quoting *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933); *see also Grant v. Bethlehem Steel Corp.,* 973 F.2d 96, 101 (2d Cir.1992). The Court must evaluate whether the degree of plaintiffs' success merits granting the fee application in its entirety, or whether a reduction is warranted based on the degree of success. *See United States Football League,* 887 F.2d at 415 (affirming reduction of award by 20% to reflect limited success); *Ragin v. Harry Macklowe Real Estate Co.,* 870 F.Supp. 510, 523 (S.D.N.Y. 1994) (reducing award by 50%), *aff'd in part, rev'd in part on other grounds,* 6 F.3d 898 (2d Cir.1993).

In its opinion on defendants' summary judgment motion, the Court noted that plaintiffs presented three claims: that defendants violated the Due Process Clause by "(1) removing Andrew from Ms. Rodriguez's home on March 18, 1994 without providing Ms. Rodriguez with pre-removal notice and an opportunity to be heard; (2) not providing timely notice of this removal or timely post-removal opportunity to be

heard, and (3) not providing Ms. Rodriguez a timely opportunity to contest McCloskey's denial of her requests to visit Andrew." (Amended Summary Judgment Order at 30–31.) After detailed analysis, the Court determined that plaintiffs' first claim should be dismissed (*see id.* at 31–37), but that plaintiffs' second and third claims should proceed to trial (*see id.* at 37–46). Viewed solely in terms of claims made, therefore, it could be reasoned that plaintiffs prevailed on two of three claims.[1] Furthermore, defendants' decision to remove Andrew without prior notice involves a set of facts distinct from defendants' post-removal conduct. Plaintiffs' claims related to the removal itself and the lack of prior notice do constitute unsuccessful claims.

■ However, all of plaintiffs' claims rested on the central contention that "there is a constitutionally protected liberty interest in the stability and integrity of the relationship between such a foster mother and foster child." (*Id.* at 2.) Thus plaintiffs' claims certainly involved " 'related legal theories.' " *Reed,* 95 F.3d at 1183 (quoting *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933). Plaintiffs' lack of success in extending these protections to pre-removal notice and an opportunity to be heard limits, but does not undermine, the basic thrust of plaintiffs' argument. As a practical matter, many of the hours billed in this case would have been devoted to plaintiffs' basic constitutional argument, with a relatively small share devoted to the extension of this principle in the specific context of defendants' alleged failure to provide pre-removal due process protections. As for attaching a numerical value to this share, the Court finds that plaintiffs' lack of success on their pre-removal claims mitigates their success in this case by 10%. The lodestar amount shall therefore be reduced by 10%.

### C. Hourly Rates

#### 1. Chadbourne & Parke

Beyond questioning the rates charged by each individual attorney on this case, defendants also question the propriety of charging Chadbourne & Parke-level rates for legal work performed in this case. Defendants contend that the "lavish resources of the [Chadbourne & Parke] firm" (Def.Mem. at 11), and its "around the clock facilities" (*id.* at 12), do not warrant its charging its standard rates "regardless of whether the client is a large multinational corporation or a client such as the plaintiff from the Bronx, New York[,] of modest means." (Def.Mem. at 7.)

In determining whether a given rate is reasonable, the Court should evaluate whether the proposed rate is "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Courts have recognized that the size and caliber of the firm in question have a significant bearing on what rates are charged. *See, e.g., Lowrance v. Coughlin,* 88 Civ. 3343(LBS), 1995 WL 103277, at *1 (S.D.N.Y. Mar. 8, 1995) ("The rates charged [$155 to $295 per hour for associates and $465 an hour for partner time] are consistent with Paul Weiss' standard rates which we find to be in keeping with the prevailing market rates and billing practices for New York City firms of comparable size and expertise."); *Algie v. RCA Global Communications, Inc.,* 891 F.Supp. 875, 895 (S.D.N.Y.1994), *aff'd,* 60 F.3d 956 (2d Cir.1995) ("[T]he movant may obtain higher compensable rates if represented by a large urban firm, since such firms typically charge more per hour to cover a higher overhead."); *Burr v. Sobol,* 748 F.Supp. 97, 102 (S.D.N.Y.1990) ("Cra-

1. This does not, of course, lead to the simple mathematical conclusion that plaintiffs should recover two-thirds, or 66%, of the fees and costs. *See Hensley,* 461 U.S. at 435 n. 11, 103 S.Ct. 1933.

vath has much higher overhead than plaintiff's lawyers, including luxury office space, 24 hour staffing, and a host of other amenities, which is reflected in the rate charged per hour."). Were the Court to ignore the higher overhead and additional costs associated with practice at major law firms, counsel at such firms, for whom Sylvia Rodriguez and Les Andrew Kelly are not typical clients, would be dissuaded from engaging in civil rights litigation on behalf of clients of modest means.

Defendants also assert that Chadbourne & Parke-level rates should not be charged here because "the proper inquiry is what Howard Seife, or another C & P partner, would in good faith allow to be charged to Sylvia Rodriguez for the legal work done in this case." (Def.Mem. at 4.) Defendants attest that "[i]t cannot reasonably be asserted that partners at C & P, exercising sound billing judgment, would have gouged their Bronx client with the rates and hours represented within the fee application." (Id. at 24.) This argument is incorrect. To limit counsel's recovery under § 1988 to. the rate counsel would have charged their low-income client would undercut the incentive for attorneys to take § 1983 cases brought by low-income clients. As the Second Circuit reiterated in Quaratino, the aim of the civil rights fee-shifting statute is to attract qualified counsel to cases in which plaintiffs are not able to pay high fees. See Quaratino, 166 F.3d at 426. Defendants' approach would seriously undermine the aim of the civil rights fee-shifting statute.[2]

**2.   Howard Seife**

Attorney Howard Seife's hourly rate for services rendered in connection with this litigation is $447.96. (See Affidavit of Howard Seife, Jan. 6, 1999 ("Seife Aff."), Exh. C.) Mr. Seife, a partner at Chadbourne & Parke, graduated from Georgetown University Law School in 1978, and was admitted to the New York Bar twenty years ago. (See Pl.Mem. at 17.) Although Mr. Seife did not bill nearly as many hours on this case as attorneys Jonathan Sobel and Romy Berk, he played a supervisory role. Defendants raise a variety of objections to the rate sought by Seife, contending that Seife is largely a bankruptcy lawyer without any substantial civil rights practice, and that as a result he should not be compensated at a rate higher than $200. (See Affidavit of Monroe Weiss, Feb. 2, 1999, Exh. 2, passim.)[3] In a recent opinion, then-District Judge Sotomayor found that there was "a preponderance of awards at $250/hr for seasoned civil rights litigators." Greenbaum, 998 F.Supp. at 304 (citing Shea v. Icelandair, 92 Civ. 7994(WK) (JCF), 1996 WL 656446, at *3 (S.D.N.Y. Nov. 8, 1996) ($250/hr to "highly experienced litigators")); Stratton v. Department for the Aging for City of New York, 91 Civ. 6623(SAS), 1996 WL 352909, at *2 (S.D.N.Y. June 25, 1996) ($250/hr to a "seasoned litigator with nearly 30 years experience"); Bridges v. Eastman Kodak Co., 91 Civ. 7985(RLC), 1996 WL 47304, at *12 (S.D.N.Y. Feb. 6, 1996) ($250/hr to "an accomplished labor lawyer, with nearly 30

**2.**   The decisions upon which defendants rely on this point suggest only that counsel should not bill hours that they would not bill to a client. In other words, a fee application should reflect the same careful screening and consideration given to a client's bill. See Ramos v. Lamm, 713 F.2d 546, 555 (10th Cir. 1983); Copeland v. Marshall, 641 F.2d 880, 891 (D.C.Cir.1980). These cases cannot be read to suggest that a fee application for civil rights work by a large law firm on behalf of an indigent client should be measured by whether that client would actually be made to pay the bill.

**3.**   Defendants also contend that the plaintiffs' submission of a schedule of fees charged in bankruptcy cases is "fundamentally irrelevant." (Def.Mem. at 7.) Plaintiffs' submission of a schedule of fees charged in bankruptcy cases is not unreasonable. See Broome, 17 F.Supp.2d at 237 (consulting listing of fees charged in bankruptcy cases to determine appropriate fee in housing discrimination case). In any event, plaintiffs have also included a survey of rates charged by major law firms from across the country. (See Seife Aff.Exh. E.)

years experience"). Mr. Seife's hourly rate greatly exceeds this amount. Courts have been willing to approve fees greater than $250/hour, however, *see, e.g., Ragin,* 870 F.Supp. at 523 (allowing rates of $275 to $300 in housing discrimination case); *Davis v. City of New Rochelle,* 156 F.R.D. 549, 558 (S.D.N.Y.1994) (allowing rate of $300 in voting rights case), particularly where the attorneys seeking fees were partners of a major firm. *See, e.g., Lowrance,* 1995 WL 103277, at *1 (approving fee of $465 an hour).

■ The fact that many courts approve awards around $250 for skilled civil rights practitioners does not, as defendants suggest, impose a cap upon fee awards where the hourly rate reflects factors other than experience. The Court must balance several factors, including "skill, experience, and reputation," *Blum,* 465 U.S. at 896 n. 11, 104 S.Ct. 1541, to arrive at a rate that appropriately compensates counsel. Mr. Seife, although not a "seasoned civil rights practitioner," is nonetheless a partner at one of New York's major law firms, which must bear the cost of higher overhead and enhanced support services. *Cf. Burr,* 748 F.Supp. at 102. On the other hand, Mr. Seife billed fewer than 10% of the total hours billed in this case. In light of these competing considerations, the Court finds that the hourly rate that best balances Mr. Seife's experience, qualifications, position at a major New York law firm, and involvement in this case, is $425.

### 3. Jonathan Sobel

■ Attorney Jonathan Sobel seeks compensation at an hourly rate of $268.93. (*See* Seife Aff., Exh. C.) Mr. Sobel graduated from Cardozo Law School in 1994, and was admitted to the New York bar in 1995. (*See* Pl.Mem. at 17.) Defendants oppose an award of fees at the requested rate largely on the ground of Mr. Sobel's alleged inexperience. The Court does not accord significant weight to this objection; many of defendants' assumptions about the extent of Mr. Sobel's experience are belied by statements made in the supplemental affidavit submitted by plaintiffs. (*See* Seife Supp.Aff. ¶¶ 12–13.) Certain of defendants' arguments are based upon mere conjecture.[4] The Court notes Mr. Sobel's relatively recent admission to the bar. *See Perdue v. City Univ. of New York,* 13 F.Supp.2d 326, 345 (E.D.N.Y.1998); *Davis,* 156 F.R.D. at 559. Balanced against this relative inexperience, however, is the fact that Mr. Sobel played an important role in the case, billing well over one-third of the total number of hours billed. Furthermore, Mr. Sobel's proposed rate must be evaluated in the context of "prevailing market rates and billing practices for New York City firms of comparable size and expertise." *Lowrance,* 1995 WL 103277, at *1. Having considered these factors, the Court finds that Mr. Sobel's hourly rate belongs in the lower end of the range appropriate for seasoned civil rights litigators. The Court finds the appropriate rate for Mr. Sobel to be $240.

### 4. Romy Berk

■ Attorney Romy Berk seeks compensation at a rate of $190.00. (*See* Seife Aff.Exh. C.) Although Ms. Berk is a relatively recent admittee to the bar, having graduated from Columbia Law School in 1997 and been sworn in only last year, Ms. Berk also played an important role in this case, billing well over one-third of the total attorney hours. (*See id.*) Thus the Court strikes the same balance as to Ms. Berk that it struck as to Mr. Sobel. Although counsel's lack of experience advises in favor of a reduction in the hourly rate charged, this reduction should not be significant in light of the critical role Ms. Berk played in the case. Having considered Ms. Berk's level of experience, her

---

**4.** Defendants observe, for example, that the presence of Mr. Sobel's friends and family in the courtroom during closing arguments "suggest that Mr. Sobel has only recently been inaugurated as trial counsel." (Def. Mem. at 9.) The Court declines to penalize Mr. Sobel for his family's interest in his closing argument.

prominent role in this case, and her position as an associate at a major New York law firm, the Court finds the appropriate rate for Ms. Berk to be $175.

### 5. Others

There are many other Chadbourne & Parke employees for whom compensation is sought, including attorneys other than Seife, Sobel, and Berk; summer associates; and paralegals and other support personnel.

■ At the outset, the Court notes that there are four attorneys who performed work of one hour or less on this case. The Court finds that these requests are unreasonable, as it is unlikely that counsel could have made a meaningful contribution to the case in such a brief period of time. *Cf. Ragin,* 870 F.Supp. at 522. Accordingly, the Court denies the fee application as to hours sought by W. Carter, Jr. (1 hour spent in assisting Ms. Rodriguez in drafting a will on 1/27/98; this amount appears to be excluded in any event, *see* Seife Aff. ¶ 19), S. Ulan (1 hour spent summarizing the history of Adoption and Safe Families Act of 1997 on 7/22/98), E. Lobenfeld (0.5 hours spent in a strategy conference on 2/19/98), and T. Freedman (0.5 hours spent inputting changes to a letter on 10/20/98). The remaining attorney whose rate is disputed is Cecilia Pohorille.[5] Ms. Pohorille, who was admitted to practice in 1995, served as a translator and consultant to facilitate communication between counsel and plaintiff Sylvia Rodriguez. (*See* Seife Aff. ¶ 11.) Ms. Pohorille's hourly rate is $270. (*See id.*) Although defendants assert that Ms. Pohorille was only recently admitted to the bar

(in 1995) and should therefore be accorded a lower rate (*see* Weiss Aff. ¶ 30), the Court finds that Ms. Pohorille's work as translator, in addition to counsel, justifies the higher fee.

■ As for paralegals and other support services personnel, defendants contend that the proposed paralegal compensation rates, which range from $70 to $180, should be reduced to a range between $75 to $100. A prevailing plaintiff may seek compensation for the work of paralegals as part of an attorneys' fee award. *See Missouri v. Jenkins,* 491 U.S. 274, 285, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) (explaining that "the 'reasonable attorney's fee' provided for by statute should compensate the work of paralegals, as well as that of attorneys"). The same principles that determine the appropriate amount of attorneys' fees also set the scope of paralegal fees. *See id.* ("[W]e have consistently looked to the marketplace as to our guide to what is 'reasonable'.") Thus it could be argued that the rates charged by Chadbourne & Parke paralegals should be subject to the same upward enhancement as those charged by its attorneys. On the other hand, the Supreme Court has cautioned that "purely clerical or secretarial tasks should not be billed at a paralegal rate." *See id.* at 288 n. 10, 109 S.Ct. 2463. In the present application, there are a variety of clerical tasks for which plaintiffs seek compensation at a paralegal rate.[6] The Court finds that any upward adjustment of the hourly rates sought by plaintiffs' paralegals should be offset by a reduction based on the purely clerical nature of the work performed. Plaintiffs' requests for fees for work performed by paralegals should be reduced to the stan-

**5.** Defendants do not raise a specific objection to the rates charged by attorneys J. Askey, A. Dinger, S. Lutz, and T. Scarola. (*See* Weiss Aff.Exh. 2, *passim.*) As for summer associates, defendants raise no objection to the rate of $95/hour. (*See id.; see also Davis,* 156 F.R.D. at 558–59 (rate of $75 for law students working for public interest organization).)

**6.** *See, e.g.,* Seife Aff.Exh. B, Entry of 1/13/98, Copying documents from productions and duplicating mark ups, at rate of $140/hour; Entry of 6/27/98, Preparing index to exhibits, at rate of $125/hour; Entry of 8/24/98, Created file labels and reorganized documents, at rate of $125/hour; Entry of 9/15/98, "File maintenance," at rate of $135/hour; Entry of 10/27/98, Instructions and Bates stamping, at rate of $180/hour.

dard hourly rates for paralegals, which is $65 to $80 per hour. *See Ginsberg v. Valhalla Anesthesia Assocs.*, 96 Civ. 6462(HB), 1998 WL 19997, *3 (S.D.N.Y. Jan. 20, 1998); *Ragin*, 870 F.Supp. at 519–20. Of course, the more experienced and/or qualified paralegals are entitled to seek a higher hourly rate. The Court's specific rates for plaintiffs' paralegals and other support personnel are set forth *infra*, in Section II.F.

## D. Hours Expended

In determining the number of hours for which fees should be awarded, the Court should not compensate counsel for hours that are "excessive, redundant, or otherwise unnecessary." *See Rivera*, 477 U.S. at 569–70 n. 4, 106 S.Ct. 2686 (quoting *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933); *Quaratino*, 166 F.3d at 426 n. 6. Upon finding that counsel seeks compensation for excessive hours, " 'the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.' " *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir.1998) (citing *New York Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir.1983)).

Defendants contend that the fee application in this case is rife with overbilling and overstaffing. Before addressing defendants' specific objections, the Court notes that this suit presented a far from easy case for plaintiffs. Indeed, the Court has expressed its view that this case presented "a series of novel and difficult questions concerning the scope and character of the procedural protections of the Due Process Clause of the Fourteenth Amendment" in a very specific factual context. (*See* Amended Summary Judgment Order at 2.) The complexity of the issues presented by this case demanded a great deal of effort and skill on the part of plaintiffs' attorneys. Defendants' suggestion that this case could have been litigated as successfully had it been less well staffed bears little relation to how extensively this case was actually litigated. Because this case presented such difficult issues, the Court finds that the hours billed by plaintiff are generally reasonable.

■ The most significant of defendants' objections relates to plaintiffs' counsel's use of "block billing." "Block billing" is a form of time-keeping that involves stating the total daily time spent on a case, rather than separating out the time into individual entries describing specific activities. Although defendants are correct to some degree that block billing makes it more difficult for the Court to determine with precision exactly how much time was spent on each task, the practice of block billing is not prohibited in this Circuit. As one court has explained, "multiple entries comply with the Second Circuit's requirement of specificity in *Carey* that the records specify the date, hours expended, and nature of the work done." *Meriwether v. Coughlin*, 727 F.Supp. 823, 827 & n. 5 (S.D.N.Y.1989) (citing *Carey*, 711 F.2d at 1148) (footnote omitted). Thus " '[i]t is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney.' " *United States Football League*, 704 F.Supp. at 477 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 473 (2d Cir. 1974)). Instead, the Court must look "at the big picture" presented by the fee application. *See Burr*, 748 F.Supp. at 100. The Court has examined the fee application closely, and does not find that, in general, plaintiffs have overstated the hours spent on this case.[7]

Defendants raise a variety of other unpersuasive objections to hours listed in the

---

7. The only entries that give the Court pause, in terms of whether the activity engaged in is the type that merits compensation, are those hours devoted to informing the media of plaintiffs' success in this case. *See, e.g.,* Seife Aff.Exh. B; Entries of 9/17/98 (Berk), 9/22/98 (Berk), 9/28/98 (Berk), 10/06/98 (Sobel). Media relations are a matter separate from litigation. However, there is precedent for awarding fees for media work, as informing the public about court proceedings is often necessary to fully vindicate the public interest

fee application. For example, defendants assert that this case was heavily over-staffed because "no less than 21 attorneys, sixteen legal assistants, two librarians, and two information specialists amassed over 3,450 hours of billing on this matter." (Def.Mem. at 1.) Contrary to defendants' image of "a legion of staff" laboring on this case (*see* Affidavit of Kenneth Gormley, Feb. 2, 1999, ¶ 3), the vast majority of the hours billed (2,450) were billed by only three individuals: Sobel, Berk, and Seife. (*See* Seife Aff.Exh. C.) Nor should plain-tiffs be penalized, as defendants suggest (*see* Weiss Aff. ¶ 19 & n. 8), for frequent intra-office conferences. *See Meriwether*, 727 F.Supp. at 827 ("The practice of divid-ing work among various attorneys in a complex and lengthy case is a common [ ] practice."). Certain of defendants' objec-tions are far afield. For example, defen-dants urge a reduction in the amount of time spent on preparation of the opening statement, on the ground that it was only 2135 words long. (*See* Weiss Aff. ¶ 68.) Defendants argue that, in light of the amount of time spent in preparation, plain-tiffs' counsel have charged $4.62 per word, and that this amount is excessive. (*See id.* ¶ 70.) Attorneys are not paid by the word; defendants' argument is unpersuasive. Many of defendants' remaining objections criticize plaintiffs' counsel for spending *too much* time preparing for depositions (*see id.* ¶¶ 59–61), or in writing the Rule 56.1 Statement (*see id.* ¶¶ 66–67). In light of the importance of these matters to the successful prosecution of this case, and the skill with which the case was prosecuted, the Court will not penalize counsel for plaintiffs for doing their job thoroughly.

**E. The Application for Costs**

■ The Court has previously noted that part of the reason attorneys at promi-nent New York law firms are entitled to charge higher rates is that higher over-head and higher costs are associated with such practice. *See supra* Section I.C.1. The Court should not, however, allow plaintiffs' counsel to recover unreasonable fees as part of the alleged cost of business at a major urban law firm. Two specific items in the bill of costs submitted to the Court should be disallowed or reduced be-cause the Court finds that these items cannot be reasonably considered part of the firm's overhead. First, counsel for plaintiffs assert that the standard rate charged to clients for in-house photocopy-ing is 20 cents per page. (*See* Seife Supp. Aff. ¶ 25.) Given that this copying could have been performed by an outside service at 10 cents per page, the Court finds that the amount charged for internal photo-copying should be reduced by half, to $6,864.65. *See Greenbaum*, 998 F.Supp. at 306 (reducing amount charged for photo-copying to 5 cents per page rather than firm's in-house rate because "more eco-nomically efficient means were clearly available to plaintiff").[8] Second, the Court concludes that defendants should not be required to pay the bill for overtime meals consumed by plaintiffs' attorneys, which amounted to $2,835.70. (*See* Seife Supp. Aff. ¶ 18.) Unlike a case involving a tem-porary restraining order, or a promptly scheduled hearing on a preliminary injunc-tion, this case was not particularly time-sensitive. As a result, overtime meals would have been a benefit, rather than a necessary cost, of litigation. The Court therefore disallows the full amount attrib-uted to overtime meals. *See Ginsberg*, 1998 WL 19997, at *4 n. 3 ("If the ... firm chooses to reimburse its attorneys' meals ..., that is a fine benefit, but not one for which defendant should be held liable.").

implicated by the case. *See United States Football League*, 704 F.Supp. at 482. Com-pensation for these hours should therefore be allowed.

**8.** The Court notes that plaintiffs have submit-ted a receipt from an outside photocopying service that charges a rate of 15 cents per page. (*See* Seife Supp.Aff.Exh. E.) It is un-likely that this is the standard rate; plaintiffs requested same day service of such copies.

In sum, $9,700.35 shall be deducted from the application for costs, resulting in a total of $165,791.01.

The Court applies the same analysis to the fee application submitted for costs incurred in relation to the instant motion. (*See* Seife Supp.Aff.Exh. L.) The costs of two overtime meals shall be disallowed (totaling $42.75), and the amount charged for photocopying shall be reduced by half (for a total of $1356.73). Accordingly, the reimbursable costs related to the instant motion are $9, 863.21.

F. Summary

Based on the foregoing, the Court concludes that the attorneys working on this case should be compensated as follows:

| Attorney Name | Rate | Hours | Total |
|---|---|---|---|
| J. Sobel | $240.00 | 1,164.00 | $279,360.00 |
| R.E. Berk | $175.00 | 1,064.00 | $186,200.00 |
| H. Seife | $425.00 | 222.30 | $ 94,477.50 |
| J. Askey | $110.00 | 123.50 | $ 13,585.00 |
| A. Dinger | $110.00 | 65.20 | $ 7,172.00 |
| S. Lutz | $110.00 | 20.90 | $ 2,299.00 |
| C. Pohorille | $270.00 | 11.50 | $ 3,105.00 |
| T. Scarola | $110.00 | 10.80 | $ 1,188.00 |
| A. Kunkin | $ 95.00 | 8.00 | $ 760.00 |
| Summer Associates | $ 95.00 | 186.60 | $ 17,727.00 |
| TOTAL | | | $605,873.50 |

The Court concludes that the paralegals on this case should be compensated as follows. As in plaintiffs' own fee application, years of experience do not necessarily determine rate of compensation. (*See* Seife Aff.Exh. F.)

| Name | Experience | Rate | Hours | Total |
|---|---|---|---|---|
| T.M. Augello | 18 years | $130.00 | 15.1 | $ 1,963.00 |
| D. Bava | 13 | $125.00 | 4.6 | $ 575.00 |
| D. Baker | 5 | $100.00 | 11.0 | $ 1,100.00 |
| M. Kroll | 5 | $ 80.00 | 11.0 | $ 880.00 |
| D. Sclafani | 5 | $ 90.00 | 130.8 | $11,772.00 |
| T. Burke | 4 | $100.00 | 261.1 | $26,110.00 |
| M. Carrera | 4 | $ 80.00 | 15.5 | $ 1,240.00 |
| K. Coleman | 4 | $ 80.00 | 9.5 | $ 760.00 |
| P. Jewels | 4 | $100.00 | 7.0 | $ 700.00 |
| M. Ortizzo | 4 | $ 90.00 | 6.0 | $ 540.00 |
| E. Kerzhnerenko | 2.5 | $ 80.00 | 21.8 | $ 1,744.00 |
| F.Y. Wang | 2 | $ 80.00 | 3.1 | $ 248.00 |
| I. Paola | 1 | $ 75.00 | 2.5 | $ 187.50 |
| V. Portnoy | less than 1 | $ 75.00 | 2.4 | $ 180.00 |
| J. Kasschau | less than 1 | $ 70.00 | 0.5 | $ 35.00 |
| V. Cabrera | less than 1 | $ 75.00 | 53.7 | $ 4,027.50 |
| TOTAL | | | | $52,062.00 |

Other support personnel are entitled to somewhat higher rates in light of their qualifications:

| Name | Position | Rate | Hours | Total |
|---|---|---|---|---|
| M.B. Roth | Librarian | $120.00 | 4.2 | $ 504.00 |
| A. Smallen | Librarian | $110.00 | 1 | $ 110.00 |
| E. Rebollar | Litigation Manager | $100.00 | 1.5 | $ 150.00 |
| M. Magsajo | Technical Support | $100.00 | 14 | $1,400.00 |
| TOTAL | | | | $2,164.00 |

As for additional fees incurred in the preparation of the fee application, the Court applies the above rates with small adjustments in light of plaintiffs' counsel's increase in fees for the new year:

| Name | Rate | Hours | Amount |
|---|---|---|---|
| H. Seife | $435.00 | 5.8 | $ 2,523.00 |
| J. Sobel | $250.00 | 57.3 | $14,325.00 |
| R.E. Berk | $185.00 | 58.4 | $10,804.00 |
| J.L. Askey | $190.00 | 46.7 | $ 8,873.00 |
| V. Cabrera | $ 85.00 | 12.0 | $ 1,020.00 |
| TOTAL | | | $37,545.00 |

The total amounts are as follows:

| | |
|---|---|
| Attorneys' Fees for the Action: | $605,873.50 |
| Paralegals' Fees for the Action: | $ 52,062.00 |
| Support Staff Fees for the Action: | $ 2,164.00 |
| All Fees for the Fee Application: | $ 37,545.00 |
| Costs for the Action: | $165,791.01 |
| Costs for the Fee Application: | $ 9,863.21 |
| Subtotal: | $873,298.72 |
| Reduction of Lodestar Amount by 10%: | $ 87,329.87 |
| Total Fees Awarded: | $785,968.85 |

*II. Conclusion*

For the reasons stated above, the attorneys' fees application is granted in part and denied in part. Plaintiffs are awarded a total of $ 785,968.85 in attorneys' fees and costs.

SO ORDERED.